APPRAISAL REVIEW BOARD OF THE EL PASO COUNTY CENTRAL APPRAISAL DISTRICT, El Paso Central Appraisal District, Canutillo Independent School District, El Paso County, El Paso County Community College District, El Paso County Hospital District, El Paso County Emergency Services District 2, El Paso County Water Control and Improvement District (Westway), and Region XIX Education Service Center, Trustee for El Paso County Education District, Appellants,

v.

Helen A. FISHER, As Personal Representative of Noel B. Fisher, Deceased, and As Executive Trustee of the Bejorka Trust, Appellee.

No. 08–01–00223–CV.

Court of Appeals of Texas, El Paso.

Oct. 17, 2002.

Rehearing Overruled Nov. 20, 2002.

808 

Anna Perez, Edward M. Sosa, Assistant County Attorneys, John C. Steinberger, Larry Baskind, Baskind, Samaniego & Hosford, P.C., Edward Dunbar, Dunbar, Armendariz, Crowley & Hegeman, L.L.P., Erich A. Morales, El Paso, Kent M. Rider, Linebarger, Heard, Goggan, Blair, Graham, Pena & Sampson, Austin, Robin Collins, Ray, McChristian & Jeans, El Paso, for Appellants.

E.P. Bud Kirk, El Paso, John Brusniak, Brusniak Clement Harrison & McCool, Dallas, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

Appellants Appraisal Review Board of the El Paso Central Appraisal District, El Paso Central Appraisal District, Canutillo Independent School District, El Paso County, El Paso County Community College District, El Paso County Hospital District, El Paso County Emergency Services District 2, El Paso County Water Control and Improvement District (Westway), and Region XIX Education Service Center, Trustee for El Paso County Education District appeal the judgment granted against them. Appellants have raised fifteen issues. We affirm.

Noel B. Fisher[1] acquired in 1977 warranty deeds to property in El Paso County

1. Mr. Fisher is now deceased; he was appar- ently recovering from pneumonia at the time

from Tom and Ann Rose in return for personal services, such as mowing the yard and chauffeuring Mr. Rose. Mr. Fisher recorded the deeds in El Paso in 1984, when he felt he had fulfilled his obligations to the couple. The deeds show Mr. Fisher's address as 2835 West Solano Drive in Phoenix, Arizona. Mr. Fisher had continuously resided at that address, even at the time of his testimony. He received no notices on taxes or appraisals on the property after recording the deeds.

Before he began selling parcels of the property around 1990, Mr. Fisher was involved in lawsuits to clear title to the property from 1984 to 1992. In 1989, he sent a letter to the El Paso County Tax Assessor to discover the amount of back-taxes and visited the tax offices several times and showed them his deeds. He received no response to his inquiry, and he was not listed on the tax roll.

After Mr. Fisher began selling the lots, the purchasers began to receive notices of delinquent taxes shortly after recording their deeds. Concerned, Mr. Fisher made complete refunds to the purchasers and contacted the tax office to (1) begin making monthly payments on the taxes and (2) stop the delinquency notices being issued to the purchasers. The parties apparently made an oral agreement that no delinquency notices would be sent to the purchasers of the property so long as Mr. Fisher continued to make monthly payments. Although Mr. Fisher made monthly payments, the tax office continued to send delinquency notices, which alarmed his purchasers, who became fearful they would be responsible for the large amount of back taxes and some of them either reduced or threatened to not make their payments.

of the trial.

On April 17, 1995, the tax office informed Mr. Fisher that they had filed a suit against him for delinquent taxes. Thence began the legal conflict culminating in the suit below. After hiring George Sanchez, a tax consultant, in June 1993, Mr. Fisher learned he was still not listed on the tax rolls and of the dramatically increased valuations on his property. From 1984 to 1985, the appraisal valuation on the property had risen significantly, so much so that on one of the lots on the property (Lot 2, Block 4), the value increased from $1,969 to $5,908. Mr. Sanchez disputed the increase in the value, because the undeveloped lots had no activity on them. There were very few houses up until 1992 and no water, sewer, paved roads, or electricity when Mr. Fisher went out to observe the property in 1978.

Through Mr. Sanchez, Mr. Fisher approached the Appraisal Review Board to apply the 1984 valuation to the property, since the appraisal had been increased without notice to Mr. Fisher and to place his name on the tax rolls. The Board denied relief on the appraisal demand but did place Mr. Fisher's name on the tax rolls for 1993 and future years. Mr. Fisher then filed suit in the trial court to obtain relief for the denial of due process and to seek refund for overpaid taxes. At the bench trial, the trial court rendered judgment for Mr. Fisher, finding variously that he had been denied due process in not receiving notice of increased appraisal valuation for his property in 1984 and was due a refund of overpaid taxes.

## DISCUSSION

Appellants have founded their argument in all fifteen issues upon the premise that the Texas Tax Code is the exclusive remedy for a taxpayer seeking redress for violations of his/her due process rights. We

follow the Appellants' lead and regroup the fifteen issues into three parts. Part I is a discussion of Issue One, which challenges the trial court's jurisdiction over the case. In Part II are Issues Two through Nine, complaining of trial court's various conclusions of law finding violation of due process and refusal to apply voluntary payment rule. Part III addresses Issues Ten through Fifteen, which contend the trial court wrongly assessed and awarded damages, including attorney's fees.

### PART I: Jurisdiction (Issue One)

Because any decision rendered by a trial court without jurisdiction is void, we must first decide whether the trial court had the jurisdiction to hear the case.

### Standard of Review

■ Whether the trial court had the jurisdiction to hear a case is a matter of law and is reviewable under the *de novo* standard. *County of El Paso v. Dorado*, 33 S.W.3d 44, 46 (Tex.App.-El Paso 2000, no pet.). A trial court's judgment is binding when it has jurisdiction over the parties or property, jurisdiction of the subject matter of the suit, jurisdiction to enter the particular judgment, and the capacity to act as a court. *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 485 (Tex.1995). Subject matter jurisdiction involves the kinds of controversies a court has the authority to resolve. *Davis v. Zoning Bd. of Adjustment of City of La Porte*, 865 S.W.2d 941, 942 (Tex.1993). Subject matter jurisdiction cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993).

### The Tax Code

■ Under Section 42.21 of the Tax Code, a taxpayer may appeal an unfavorable decision of the appraisal review board to the district court. TEX.TAX CODE ANN. § 42.21(a), (b) (Vernon 2001). However, the taxpayer must comply strictly with the statute in order to successfully file an appeal; else, the court loses jurisdiction over the case. TEX.TAX CODE ANN. § 42.21(a), (b); *Harris County Appraisal Dist. v. Drever Partners, Inc.*, 938 S.W.2d 196, 197–98 (Tex.App.-Houston [14th Dist.] 1997, no writ); *Poly–America, Inc. v. Dallas County Appraisal Dist.*, 704 S.W.2d 936, 937–38 (Tex.App.-Waco 1986, no writ). The version of Section 42.21 applicable to this case required Appellee to file a petition against the appraisal district within forty-five days after receiving the notice that the appraisal review board had entered a final, appealable order. TEX.TAX CODE ANN. § 42.21(a) and (b) (historical note Act of May 26, 1989, 71st Leg., R.S., ch. 796, § 44, 1989 TEX.GEN.LAWS 3604–05; Act of August 25, 1991, 72nd Leg., 2nd C.S., ch. 6, § 54, 1991 TEX.GEN.LAWS 38).

### Application

Mr. Fisher recorded his deeds to the Westway lots in 1984. The property's appraisal value was increased in 1985. Although he apparently contacted the appraisal district to discover the amount of the unpaid taxes in 1989, he never received a notice that the property's appraisal had increased in 1985 and only learned of the increase value in 1993, when he had begun selling the lots. That same year, Mr. Fisher protested the increased appraisal value to the appraisal review board, which ultimately rendered an unfavorable decision for him. Mr. Fisher then filed a petition against the Appraisal Review Board on April 1, 1994, and did not amend the petition to include the appraisal district until December 9, 1997, more than three years after filing the first petition.

Undoubtedly, under the tax code, the trial court did not have subject matter jurisdiction over the case; however, courts

have historically asserted jurisdiction over suits where a taxpayer alleges violations of his/her constitutional rights.[2] *See Republic Ins. Co. v. Highland Park Indep. Sch. Dist.,* 141 Tex. 224, 227–28, 171 S.W.2d 342, 344 (1943); *County of Bexar v. Southoaks Dev. Co., Inc.,* 920 S.W.2d 330, 335–36 (Tex.App.-San Antonio 1995, no writ); *Inwood Dad's Club, Inc. v. Aldine Indep. Sch. Dist.,* 882 S.W.2d 532, 537–38 (Tex. App.-Houston [1st Dist.] 1994, no writ); *City of Houston v. Harris County Outdoor Adver. Ass'n,* 879 S.W.2d 322, 334 (Tex. App.-Houston [14th Dist.] 1994, writ denied), *cert. denied,* 516 U.S. 822, 116 S.Ct. 85, 133 L.Ed.2d 42 (1995); *New v. Dallas Appraisal Review Bd.,* 734 S.W.2d 712, 714 (Tex.App.-Dallas 1987, writ denied); *Garza v. Block Distrib. Co., Inc.,* 696 S.W.2d 259, 262 (Tex.App.-San Antonio 1985, no writ); *City of Corpus Christi v. Arnold,* 424 S.W.2d 492, 496 (Tex.Civ.App.-Corpus Christi 1968, writ ref'd n.r.e.); and *City of El Paso v. Howze,* 248 S.W. 99, 100–01 (Tex.Civ.App.-El Paso 1923, writ ref'd).

Mr. Fisher sought declaratory judgment to void taxes assessed by Appellants from 1984 through 1992 for the failure to notify him of increased appraisal values in violation of the Texas and U.S. Constitutions. Because Mr. Fisher alleged there was no delivery of notice of the increased appraisal, Appellants did not gain jurisdiction over him, the appraisal was subject to challenge at any time or place, outside of the statute, and the trial court had the jurisdiction to hear the case. *See New,* 734 S.W.2d at 714; *Garza,* 696 S.W.2d at 262. We overrule Appellants' first issue.

*PART II: Challenges to Conclusions of Law (Issues Two through Nine)*

### Standard of Review

The trial court's conclusions of law are not binding on the reviewing court; instead, we are free to draw our own legal conclusions. *Dechon v. Dechon,* 909 S.W.2d 950, 954–55 (Tex.App.-El Paso 1995, no writ). A trial court's conclusions of law are reviewable under the de novo standard. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

## Issues Two through Five: Due Process

In Issues two through Five, Appellants challenge the trial court's first three conclusions of law finding the taxes and penalties void and the denial of due process to Mr. Fisher.

### Trial Court's Conclusions of Law Nos. 1, 2, and 3

The trial court made the following conclusions of law:

1. The 1985–1992 taxes upon the Properties, having been imposed without notice to FISHER, are void. *D & M Vacuum Service, Inc. v. Zavala County Appraisal District,* 812 S.W.2d 435, 438 (Tex.Civ.App.-San Antonio 1991, no writ). It is as if no tax had ever been assessed.

2. All penalties added to the void tax, are similarly void because they were imposed without notice to FISHER. Such penalties include the 6% penalty imposed February 1 of the year following the tax year, the 6% imposed July 1 of the year following

2. The 14th Amendment of the United States Constitution states, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1.

Article I, Section 19 of the Texas Constitution states, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19.

the tax year, and the 15% collection fee imposed in July of the year following each tax year. Such penalties were also waived when the tax bills that were returned non-deliverable, were not re-sent to FISHER within twenty day, at the address he had furnished to CENTRAL APPRAISAL DISTRICT. Property Tax Code § 33.011(b).

3. FISHER was not afforded any opportunity to be heard as to increased tax valuations of the Properties, before the Appraisal District approved the tax roll. He was therefore denied due process. *City of El Paso v. Howze*, 248 S.W. 99 (Tex.Civ.App.-El Paso 1923, writ ref'd).

### Requirements of Due Process

 Collection of a tax constitutes a deprivation of property; therefore, a taxing unit *must* afford a property owner due process of law. *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dept. of Bus. Regulation of Florida*, 496 U.S. 18, 36–7, 110 S.Ct. 2238, 2250–51, 110 L.Ed.2d 17 (1990). Due process, at a minimum, requires notice and a fair opportunity to be heard prior to a deprivation of a protected property interest. *Id.* A taxpayer is denied due process when his property is encumbered with an additional tax lien without the opportunity to be heard. *Garza*, 696 S.W.2d at 262. Without such opportunity, any increase in the appraisal value is a void act. *Republic Ins. Co.*, 171 S.W.2d at 344; *City of Corpus Christi*, 424 S.W.2d at 496.

**3.** The Court in *Garza* held that the appraisal review board never gained jurisdiction to consider any increases in the appraisal of the taxpayer's property, because the taxpayer was denied due process when his property was encumbered with an additional tax lien without the opportunity to be heard. *Garza*, 696

### Application

Appellants stipulated that Mr. Fisher received no notice of the increase in the appraisal value from 1985 through 1992, and further, was not even listed in the tax roll, although he had recorded his deed to the property in 1984. The law unambiguously prohibited the taxing authorities from increasing the appraisal value without due process, which required notice to Mr. Fisher of the appraisal and an opportunity to be heard on the raise.[3] Since it is undisputed that Mr. Fisher neither received notice nor had an opportunity to contest the appraisal, he was denied due process, and any taxes and penalties assessed from the appraisal is void. The trial court did not err in making its first, second, and third conclusions of law. We overrule Appellants' second, third, fourth, and fifth issues.

### Issues Six through Nine: Voluntary Payment Rule

Appellants argue in issues six through nine that the trial court erred in finding in the fourth, ninth, and tenth conclusions of law that the voluntary payment rule does not prohibit Appellee from recovering the taxes and penalties paid.

### Trial Court's Conclusions of Law Nos. 4, 9, and 10

The trial court made the following conclusions of law:

4. The void taxes, as a matter of law, could not have been, and were not validated by any conduct of FISHER of any other event, subsequent

S.W.2d at 262. Therefore, any increase in the appraisal was a void act, subject to challenge at any time or place. *Id.; see also New*, 734 S.W.2d at 714, *citing Garza* (Failure to deliver notice of increased valuation of property deprived taxing district jurisdiction over taxpayer.).

to their attempted imposition by the APPRAISAL REVIEW BOARD and/or CENTRAL APPRAISAL DISTRICT. *French Independent School District v. Howth*, [134 Tex. 211] 134 S.W.2d 1036 (Tex.Comm. App.-1940, opinion adopted); *Commander v. Bryan*, 123 S.W.2d 1008, 1015 (Tex.Civ.App.-Ft. Worth 1938); *Wamsley v. Champion [Champlin] Rfg. & Chemicals, Inc.*, 11 F.3d 534, 539 (5th Cir.1993). *See also Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.Sup.1990), on the difference between 'void' (no jurisdiction) and 'voidable' (erroneous).

. . .

9. The payments upon void taxes in this case are not subject to the rule that illegal taxes, paid voluntarily, cannot be recovered. The taxes were void and do not qualify as 'illegal' taxes. The Court here follows those Texas cases which have indicated the voluntary payment rule should not be applied to taxes imposed without due process. *Salvaggio v. Houston Independent School District*, 752 S.W.2d 189, 193 (Tex. Civ.App [14th Dist.] 1988); *Frost v. Fowlerton Consolidated School District # 1*, 111 S.W.2d 754, 756–757 (Tex.Civ.App.-Beaumont 1937); *National Biscuit Co. v. State*, [134 Tex. 293] 135 S.W.2d 687, 694–695 (Tex. Sup.1940).

10. Even if the 1985–1992 taxes FISHER paid were merely illegal, as opposed to void, the Court heard all of the evidence offered on the issue of whether his payments were voluntary. The Court finds that if the voluntary payment rule were to apply, FISHER's payment of them was made under implied duress, to prevent damage (financial loss) to his property sales business. The Court here follows the totality of circumstances test of what constitutes business duress, set forth in *Crow v. City of Corpus Christi*, [146 Tex. 558] 209 S.W.2d 922, 924 (Tex.Sup.1948): '[T]he question is one to be determined from the particular circumstances under which the payments are made.'

### Voluntary Payment Rule

 Voluntary payment of an illegal tax will not support a claim for repayment. *Camacho v. Samaniego*, 954 S.W.2d 811, 825 (Tex.App.-El Paso 1997, writ. denied). However, when the taxing authority violates a taxpayer's right to due process, the tax imposed and paid is considered void, and the voluntary payment rule does not apply. *Republic Ins. Co.*, 171 S.W.2d at 344; *Salvaggio v. Houston Indep. Sch. Dist.*, 752 S.W.2d 189, 192–93 (Tex.App.-Houston [14th Dist.] 1988, writ denied) (taxpayers had opportunity to contest the tax penalty before payment; thus, the voluntary payment rule could apply without a violation of due process); *Garza*, 696 S.W.2d at 262; and *City of Corpus Christi*, 424 S.W.2d at 496.

### Application

We have already held that (1) Mr. Fisher was denied due process when Appellants failed to send him notice of the increased appraisal values and denied him an opportunity to be heard and (2) any taxes and penalties from the increased appraisal value are void. The voluntary payment rule does not apply to void taxes; thus, there is no need to reach Issues Eight and Nine. We find no error in the trial court's fourth, ninth, and tenth conclusions of law. Appellants' sixth, seventh, eighth, and ninth issues are overruled.

## PART III: Damages (Issues Ten through Fifteen)

### Waived Issues (Issues Ten, Eleven, and Thirteen)

■ Issues Ten and Eleven allege the trial court applied incorrect measure of damages as calculated by George Sanchez's, Mr. Fisher's expert and a tax consultant. Appellants made no objections to Mr. Sanchez testimony on February 21, 2000 which (1) described his accounting methodology and (2) concluded Mr. Fisher had paid off delinquent taxes by July 29, 1994, and actually had overpaid. It was not until the next day, when Mr. Fisher offered Mr. Sanchez's accounting compilation into evidence (from which he had been testifying the day before), that Appellants objected and only to the offering of the records into evidence. The trial court admitted the exhibits subject to Appellants' review and overruled other objections. Appellants did not seek a running objection to Mr. Sanchez's testimony nor did they object during his continuing testimony on the amount of refund due Mr. Fisher. To preserve error for complaint on appellate review, the complaining party must have made a *timely* objection and obtained a ruling. TEX.R.APP.P. 33.1(a). Since Appellants did not timely object to Mr. Sanchez's testimony, any error concerning the methodology of accounting is waived. Issues Ten and Eleven are overruled.

Appellants have not supported their thirteenth issue with appropriate citations to the authorities and record nor presented any argument. Texas Rules of Appellate Procedure 38.1(h) states the brief *must* contain a clear and concise argument with appropriate citations to authorities and the record; otherwise, the issue is waived. TEX.R.APP.P. 38.1(h); *Leyva v. Leyva*, 960 S.W.2d 732, 734 (Tex.App.-El

Paso 1997, no writ). We overrule Appellants' thirteenth issue.

### No–Evidence for Refund of Taxes as Damages (Issue Twelve)

■ In their twelfth issue, Appellants argue there is no evidence to support the trial court's finding that Mr. Fisher is due a refund of $214,624.14 in overpaid taxes.

### Standard of Review

■ In a bench trial, the trial court's findings of fact and conclusions of law have the same effect as a jury verdict on special issues. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex. Civ.App.-Houston [14th Dist.] 1977, writ ref'd n.r.e.). When presented with a "no evidence" or legal sufficiency challenge, a reviewing court will consider the evidence in the light most favorable to the finding, disregarding all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford*, 726 S.W.2d at 16; *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex.App.-El Paso 1992, no writ).

### Trial Court's Findings of Fact No. 9

The trial court found in its ninth findings of fact that Mr. Fisher was due a refund of $214,624.14 in overpaid taxes. From the testimony of George Sanchez, the trial court surmised Mr. Fisher had paid $122,642.99 by May 4, 1994, or enough to pay off all delinquent taxes for the years 1968 to 1984 if the City Tax Office had allowed Mr. Fisher to pay off the oldest taxes first. Mr. Fisher had paid $61,760.56 and $33,839.23 respectively by November 29, 1994 and March 6, 1995, which amounts were sufficient to pay off the remaining taxes and interest for the years 1985 to 1992. Mr. Fisher's pay-

ments to the tax office totaled $432,866.23, from which the trial court subtracted $218,242.09, or the amount sufficient to pay off all taxes and interest from 1968 to 1992 based on Mr. Sanchez's accounting method and using 1984 property appraisal value. The resulting calculation, $214,624.24, was the refund due Mr. Fisher for overpaid taxes.

## Measure of Damages

 Damages must be measured by a legal standard, and that standard must be used to guide the fact finder in determining what sum would compensate the injured party. *Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied), *citing Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 90 (Tex.1973). The proper measure of damages is a question of law for the court. *Allied Vista, Inc.,* 987 S.W.2d at 141. The facts of the case determine the proper measure of damages as well as any allowance offsets. *Vance v. My Apartment Steak House of San Antonio, Inc.,* 677 S.W.2d 480, 481 n. 1 (Tex. 1984); *Weitzul Const., Inc. v. Outdoor Environs,* 849 S.W.2d 359, 363 (Tex.App.-Dallas 1993, writ denied).

## Application

Mr. Sanchez opined that the oldest taxes due should have been paid off for all lots, and he assumed this method of accounting as he calculated the refund due Mr. Fisher from the payment roster. As Mr. Sanchez tallied up the payments Mr. Fisher had made beginning in March 1993, he applied the amounts to the pre–1985 taxes first. According to his calculations, Mr. Fisher had completed paying off taxes due for the years from 1968 to 1984 in the amount of $122,642.29 by May 4, 1994. Tax due on the lots, including interest, for years 1985 to 1992 was $61,760.56, paid off on Novem-

ber 29,1994, and the tax of $33,839.24 on the tracts was finally discharged on March 6, 1995. Thereafter, Mr. Fisher continued to make payments totaling $214,624.14, beyond the amount of taxes due on the property based on the 1984 appraisal rate, until November 14, 1997. Mr. Sanchez concluded Mr. Fisher had completed paying all taxes due as calculated by his equitable model by March 6, 1995, and a refund was due Mr. Fisher in the amount of $214,624.14.

 Evidence supports the trial court's Findings of Fact No. 9. Mr. Sanchez's calculation of taxes that Mr. Fisher overpaid and thus due as a refund corresponds with the trial court's findings. Refund of excess taxes paid could be a clear and certain remedy, especially in cases of due process violations. *McKesson Corp.,* 496 U.S. at 39–40, 110 S.Ct. at 2251–52. Since refund of excess taxes paid is an appropriate measure of damages in the cases of violation of due process and evidence supports the amount of refund found by the trial court, there is more than a scintilla of evidence for the damages, and the no-evidence challenge fails. *See, e.g., City of Houston,* 879 S.W.2d at 333–34, 335. We overrule Appellants' twelfth issue.

### *Attorney's Fees (Issues Fourteen and Fifteen)*

 Appellants dispute attorney's fees in Issues Fourteen and Fifteen, because Appellee's suit proceeded outside of the Tax Code.

 In a Declaratory Judgment action, the trial court has the discretion to award costs and reasonable and necessary attorney's fees, as are equitable and just. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). Absent a clear abuse of discretion, the trial court's judgment will not be reversed on appeal. *Leon Ltd. v. Albuquerque Commons P'ship,* 862 S.W.2d

693, 708 (Tex.App.-El Paso 1993, no writ). An abuse of discretion occurs when the trial court's judgment is without any reference to guiding rules or principles, or is arbitrary or unreasonable. *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex.1996).

At trial, testimony was adduced on the attorney's fees accumulated and the reasonableness of the fees. John Brusniak, Jr. testified that he was a licensed attorney in Texas and had helped to represent Mr. Fisher. At the time of the trial, he was charging $250 per hour for his services and had accumulated an estimated amount of $32,800 to $34,800 plus expenses of over $3,000 as his fees. He then described the necessary and reasonable services rendered, such as strategizing and negotiating for a settlement. Mr. Brusniak's bill specifying the services rendered was offered and accepted into evidence. E.P. "Bud" Kirk said he was a licensed attorney in Texas and had been representing Mr. Fisher since 1986. Mr. Kirk charged $150 per hour for his services and his services included litigating the case. His bill at the time of the trial was over $90,000, including various expenses. Sanford Cox, Jr. testified that he was a practicing attorney in Texas and was familiar with the hourly rates charged by attorneys in El Paso, Texas. Mr. Cox had examined Mr. Brusniak's bill and thought his services reasonable and necessary. Mr. Cox then estimated that appellate fees would amount to around $20,000 respectively for appeals at the court of appeals and at the Texas Supreme Court.

The trial court awarded attorney's fees as follows: $85,022 to Mr. Kirk, $31,135.65 to Mr. Brusniak, and additional $15,000 for an appeal to a court of appeals and $10,000 in the event of an appeal to the Texas Supreme Court. The attorney's fees are well within the range testified to by the various attorneys. The trial court also

heard evidence that the fees were reasonable and necessary. As the trial court's decision is well within the guidelines and supported by the evidence, there is no abuse of discretion. Appellants' fourteenth and fifteenth issues are overruled.

The judgment of the trial court is affirmed.