COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JUAN ALVAREZ a/k/a JUAN
ALVAREZ           )

GOTTWALD,                                                       )

                                                                              )               No.  08-02-00050-CV

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
120th District Court

DONALD V. LABBRUZZO, CARLOS               )

CAMARILLO,
HARBROOK TOOL & MFG.     )           
of El Paso County, Texas

COMPANY, and PLASTICOS
PROMEX,          )

U.S.A., INC.,                                                        )                    (TC# 99-3903)

                                                                              )

Appellees.                          )

 

 

MEMORANDUM  OPINION

 

This is an appeal
from a bench trial in which the trial court entered a declaratory judgment
assessing the ownership percentages of the Appellant and Appellees
Donald V. Labbruzzo, Carlos Camarillo, Harbrook Tool & MFG. Co. in the corporation Plasticos Promex, U.S.A., Inc.,
also an Appellee in this suit (we will refer to the
four Appellees as AAppellees@).








On appeal,
Appellant raises four issues:  (1)
whether the evidence was factually and legally sufficient to support the trial
court=s
interpretation of the Agreement and the determination of the capital
contributions and ownership percentages of Mr. Alvarez, Mr. Camarillo, and
Mr. Labbruzzo, specifically, attacking Findings of
Fact Nos. 3, 5, 6, 7, 8, 10, 14, 17, 18, 26, 27, and Conclusions of Law Nos. 3
and 4; (2) whether the trial court erred in disregarding the testimony of
Michael Bernstein on the ultimate issue of ownership percentages; (3) whether
the evidence was factually and legally sufficient to support the trial findings
as to any acts of Appellant, specifically attacking Findings of Fact Nos. 17,
18, 19, 20, 21, 22, 23, 25, 28, 29, 30, 31, and 32, and Conclusions of Law Nos.
1, 3, and 7; and (4) whether the trial court erred in awarding attorney=s fees to Appellees.  We affirm the trial court=s judgment.

On August 25,
1995, Appellant Juan Alvarez and Appellees, Donald V.
Labbruzzo and Carlos Camarillo, entered into a
written agreement for the purpose of creating plastic injection molding maquiladora companies. 
The August 25, 1995 Agreement (AAgreement@) did not define the term corporation,
did not name Plasticos Promex,
U.S.A., Inc., and did not set a time limit as to when the parties would
discontinue making capital contributions towards the establishment of the
corporation.  However, the parties agree
that the terms of the Agreement would control the parties= ownership interests in the U.S.
corporation.  The pertinent translated
portion of the Agreement states the following:

The parties declare that they wish to
establish in the immediate future a corporation of adjustable capital (S.A. de C.V.)
in Ciudad Juarez, Chihuahua, to carry out manufacturing operations consisting
in the fabrication of plastic components. 
Said plastic components shall be sold, and/or assembled with others
[sic] components and sold to other companies principally for their export.

 

This agreement shall be carried out
under the following terms:

 

1.         The parties shall have a right to
shares of the Corporation in the proportion to their contributions in capital
and/or contributions of credit guaranteed by entities other than the
Corporation.

 

2.         The administration of the Corporation
shall be carried out by a board of administration which represents the
interests of the parties in the proportion corresponding to each on as per
their contributions in accordance with paragraph 1 above.

 








3.         In order to carry out in the immediate
future the activities of the Corporation previously described, the parties
agree to buy six Nissei plastic molding machines from
Industrial Assets, Inc. under the following conditions . . . .

 

To establish the
plastic injection molding company, Mr. Alvarez, Mr. Labbruzzo,
and Mr. Camarillo leased a building in Juarez and completed the necessary
renovations and installations, including the purchase of six plastic injection
molding machines.  In January 1996, Plasticos Promex, S.A. de C.V.,
the Mexican corporation was incorporated. 
An Acta was executed under Mexican law which
provided the following ownership percentages of Plasticos
Promex, S.A. de C.V.: 
Mr. Alvarez -- 60 percent; Mr. Labbruzzo -- 20
percent; and Mr. Camarillo -- 20 percent. 
The incorporation of Plasticos Promex S.A. de C.V. was handled by Mr. Alvarez.  Mr. Alvarez also named himself sole
administrator of the Mexican corporation, although the parties involved had
agreed there would be a board.  At that
time, no accounting existed of the parties capital contributions towards this
venture.  Mr. Labbruzzo
and Mr. Camarillo were not concerned by the terms of Acta
because they, along with Mr. Alvarez, had agreed the American twin company
would ultimately own all the assets, handle all the contracts, and control
everything, leaving the Mexican corporation as a shell corporation.  From the date of incorporation of the Mexican
company through mid-1997, all the parties continued to make capital
contributions to the company.








On May 7, 1996, a
U.S. corporation was formed by the name of Plasticos Promex, U.S.A.,  Inc., by changing the name of a
dormant, pre-existing corporation, Tech Plastics International, Inc.  The shareholders of Plasticos
Promex, U.S.A. were to be Mr. Alvarez, Mr. Labbruzzo, and Mr. Camarrillo.  The final accounting of the company was never
completed and therefore, stock was never issued for the U.S. corporation.

On April 11, 1997,
Mr. Alvarez, Mr. Labruzzo, and Mr. Camarillo agreed
to sell 10 percent of the stock of the American corporation to Harbrook Tool & Mfg. Co.  However, the sale to Harbrook
was not completed since the ownership interests of the shareholders (Mr.
Alvarez, Mr. Labbruzzo, and Mr. Camarillo) had not
been made.  For the next few years, the
company continued to be profitable but the final accounting of the shareholders= ownership interest was never
completed.  Mr. Alvarez requested several
times for the accounting to be completed, but it was never done.

By November of
1999, the relationship between Mr. Alvarez and the other shareholders had
soured.  Appellees
filed this lawsuit requesting a declaratory judgment regarding the ownership
interests of the parties in Plasticos Promex, U.S.A. and injunctive relief.  On September 4, 2001, the trial court entered
a judgment in which it declared the ownership interests as follows:  Mr. Alvarez 35.25 percent; Mr. Camarillo
28.25 percent; Mr. Labbruzo 36.50 percent; and Harbrook Tool & Mfg. Co. 10 percent.  The trial court also denied Appellees request for permanent injunction against Mr.
Alvarez and awarded attorney=s
fees in the amount of $132,064.60 in favor of Appellees.  On November 21, 2001, Mr. Alvarez filed a
motion for new trial which was apparently overruled by operation of law.  Upon Mr. Alvarez=s
request for findings of fact and conclusions of law, the trial court entered a
series of findings of fact and conclusions of law.  Mr. Alvarez now brings this appeal.

STANDARD
OF REVIEW








In a bench trial,
the trial court=s
findings of fact and conclusions of law have the same effect as a jury verdict
on special issues.  Appraisal Review
Board of the El Paso County Central Appraisal District v. Fisher, 88 S.W.3d
807, 815 (Tex.App.--El Paso 2002, pet. denied), citing
City of Clue v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex.Civ.App.--Houston [14th Dist.] 1977, writ ref=d n.r.e.).  In dealing with a Ano
evidence@ or legal
sufficiency challenge, we will consider the evidence in the light most
favorable to the finding, disregarding all evidence and inferences to the
contrary.  Fisher,
88 S.W.3d at 815, citing Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex.
1987).  If more than a scintilla
of evidence exists to support the questioned finding, the legal insufficiency
point fails.  Id.

In considering a
factual sufficiency challenge, we consider all the evidence, both the evidence
tending to prove a vital fact as well as the evidence tending to disprove its
existence.  Heritage
Resources, Inc. v. Hill, 104 S.W.3d 612, 620 (Tex.App.--El
Paso 2003, no pet.).  If the finding
is so contrary to the great weight and preponderance of the evidence as to be
wrong and manifestly unjust, the finding should be reversed.  See id.  When undertaking a factual sufficiency
review, the court of appeals may not set aside fact findings merely because it
could have drawn different factual findings and legal conclusions from the
evidence.  Omohundro v. Jackson,
36 S.W.3d 677, 680 (Tex.App.--El Paso 2001, no pet.).  The appellate court cannot retry the case or
otherwise substitute its judgment or opinion for that of the trier of fact.  Id.  The trier of fact
is the sole judge of the credibility of the witnesses and the weight to be
given to their testimony, and the appellate court should not act as a
thirteenth juror in assessing the evidence and the credibility of the
witnesses.  Id.








A
trial court=s
conclusions of law are always reviewable.  Leon Ltd. v. Albuquerque
Commons Partnership, 862 S.W.2d 693 (Tex.App.--El
Paso 1993, no writ).  Incorrect
conclusions of law will not require reversal, however, if the controlling
findings of fact will support a correct legal theory.  Leon, Ltd., 862
S.W.2d at 702.

In Issue One, Mr.
Alvarez challenges the legal and factual sufficiency of the evidence to support
the trial court=s
interpretations of the unambiguous August 25, 1995 Agreement and the
determination of the capital contributions and the ownership percentages of Mr.
Alvarez, Mr. Camarillo, and Mr. Labbruzzo
towards Plasticos Promex
U.S.A., Inc.[1]  Appellees allege
that whether this Court finds the Agreement ambiguous or unambiguous, the
evidence supports the trial court=s
conclusions.  

When interpreting
a contract, the primary concern of the courts is to ascertain and give effect
to the intentions of the parties as expressed in the instrument.  Haddad v. Wood, 949 S.W.2d 438, 441 (Tex.App.--El Paso 1997, writ denied), citing Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983); Duracon,
Inc. v. Price, 817 S.W.2d 147, 149 (Tex.App.--El
Paso 1991, writ denied).  When the
interpretation of the contract is at issue, the courts must first determine if
the language of the provisions in question are ambiguous.  Id. 


Whether a contract is ambiguous is a
question of law that must be decided by examining the contract as a whole in
light of the circumstances present when the contract was entered.  A contract is not ambiguous if it can be
given a definite or certain meaning as a matter of law.  On the other hand, if the contract is subject
to two or more reasonable interpretations after applying the pertinent rules of
construction, the contract is ambiguous, which creates a fact issue on the
parties=
intent.  An ambiguity does not arise
simply because the parties advance conflicting interpretations of the
contract.  For an ambiguity to exist,
both interpretations must be reasonable.

 








Z.A.O., Inc. v. Yarbrough Drive
Center Joint Venture, 50 S.W.3d 531, 540 (Tex.App.--El
Paso 2001, no pet.), quoting Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587 (Tex. 1996)(citations omitted).

When the parties
disagree over the meaning of an unambiguous contract, the court must determine
the parties=
intent by examining and considering the entire writing.  Haddad, 949 S.W.2d
at 441.  To determine the
objective intent of the parties, a court should examine the entire instrument
in an effort to harmonize and give effect to all provisions of the contract so
that none will be rendered meaningless.  Id., citing Coker, 650 S.W.2d at 393.  The intent of the parties must be taken from
the agreement itself, not from the parties= present interpretation, and the
agreement must be enforced as it is written. 
Haddad, 949 S.W.2d at 441, citing Sun Oil
Company (Delaware) v. Madeley, 626 S.W.2d 726,
731-32 (Tex. 1981).

Mr. Alvarez
contends that the date of incorporation of the Mexican company was, as a matter
of law, the date that should have been used to calculate the capital
contributions of the parties.  However,
we are not persuaded that the language of the Agreement provides any
distinction between when capital contributions stop and contributions toward percentage  ownership
begin.  The pertinent portion of the
Agreement states the following:  

The parties shall have a right to
shares of the Corporation in the proportion to their contributions in capital
and/or contributions of credit guaranteed by entities other than the
Corporation.

 








This language indicates that the
ownership interests would be determined based on the parties total capital
contributions, which is how the trial court determined the ownership
percentages.   Furthermore, in reviewing
the record, we find evidence of the parties intent to
determine the ownership percentages after all the necessary capital
contributions had been invested to establish the business.  In addition, at the time Plasticos
Promex S.A. de C.V. was incorporated, there was not
an accounting of the capital contributions made by the parties involved.  Mr. Alvarez also testified at trial that at
the time the parties agreed to sell 10 percent of the stock to Harbrook Tool & Mfg. Co., the respective ownership
interests had not been determined. 
Furthermore, Harbrook=s
representative testified at the trial that Mr. Alvarez ensured him that no one
shareholder had more than fifty percent ownership interest in the company.  Harbrook=s representative further stated that
but for Mr. Alvarez=s representation, they would have not invested in the
company.  We therefore conclude that the
evidence is legally and factually sufficient to support the trial court=s findings with regards to the
ownership percentages and capital contributions.  Issue One is overruled.

In Issue Three,
Mr. Alvarez alleges that the evidence was legally and factually insufficient to
support the trial court=s
findings as to any acts of Mr. Alvarez.[2]  Specifically, Mr. Alvarez complains of the
following findings of fact:

17.       Juan Alvarez a/k/a Juan Alvarez Gottwald was entitled to receive credit for his
contribution of the eight (8) plastic injection molding machines as an equity
investment; but, the equity contribution for providing the machines should be
considered on a >net
present value= basis
and with zero interest.  Mr. Alvarez= investment should not be counted the
same as those of the other two equity investors, on a dollar for dollar basis,
because Mr. Alvarez=
money was not substantially >at
risk=,
especially near the beginning of his investment when the collateral value of
the molding machines equaled or exceeded the amount of money that he had
invested.  In part, this is due to the
fact that title to the molding machines remained with Immobilaria
Axial S.A. de C.V.  This result is also
due to Alvarez=s actions
in having the molding machines removed from the Mexican manufacturing facility
through the use of Mexican legal process.

 








18.       Alvarez, acting through Axial and/or
through Plasticos Promex,
S.A. de C.V. initiated civil and/or criminal proceeding in Mexico after this
lawsuit was initiated wherein it has sought and obtained possession of these
eight (8) molding machines.

 

19.       In 1998, Juan Alvarez Gottwald
ordered Don Labbruzzo, the manager for the Juarez
manufacturing facility, to refrain from paying rent on the building until the
Lewis commission dispute was resolved.

 

20.       Subsequently, the Mexican landlord,
Lewis, advised Labbruzzo that he was going to
initiate legal proceedings in Mexico to shut down the manufacturing facility if
rentals were not paid.  

 

21.       The Mexican landlord would have been
within his rights to shut down the manufacturing facility if rents were not
paid.

 

22.       Thereafter, in an effort to keep the
facility open and operating, Labbruzzo began to
authorize checks for payment of rent to Lewis. 
Subsequently, Alvarez found out about same and demanded that the rental
payments be ceased.  Alvarez removed Labbruzzo as an authorized signatory on Plasticos
Promex, S.A. de C.V.=s bank accounts.  

 

23.       Alvarez terminated Labbruzzo=s Power of Attorney for Plasticos Promex, S.A. de C.V.
Said act significantly impaired Labbruzzo=s ability to operate the Mexican
manufacturing facility of Plasticos Promex, U.S.A., Inc.

 

.          .          .

 

25.       Subsequently, the landlord terminated the
lease; and, Plasticos Promex,
U.S.A., Inc. has been required to do business in Mexico through its wholly
owned subsidiary Servicios y Plasticos
Ensambles, S.A. de C.V.

 

.          .          .

 








28.       Prior to the filing of this lawsuit, the
Defendant Alvarez threatened irreparable harm to the Plaintiffs= property and rights by removing Labbruzzo as a signatory authority on Plasticos
Promex, S.A. de C.V.=s
bank account, but withholding rental payments to Lewis, the Mexican
manufacturing facility=s
landlord, and by terminating Labbruzzo=s Power of Attorney.  Further Alvarez attempted to revoke Labbruzzo=s
signatory authority from Plasticos Promex, U.S.A., Inc.=s funds and bank accounts to enforce
his alleged rights with regard to the Lewis commission agreement.  Alvarez=s
withdrawal of funds from the U.S. bank accounts for Plasticos
Promex, U.S.A., Inc. would have prohibited and
prevented Plasticos Promex,
U.S.A., Inc. and Plasticos Promex,
S.A. de C.V. from continuing in operation. 
Failure to pay the Mexican landlord, the failure to pay Mexican
employees, or the failure to pay Mexican taxes would have resulted in a
complete shutdown of the Mexican manufacturing facility.  Shutdown of said facility would have resulted
in the shutdown of the entire Plasticos Promex operation.

 

29.       Either prior to the filing of the lawsuit
of immediately thereafter, the Defendant Alvarez changed the customs broker for
Plasticos Promex, S.A. de
C.V. in order to exercise exclusive control over the operations of Plasticos Promex, U.S.A.,
Inc.  As a result of the change in
brokers, Plasticos Promex
U.S.A., Inc.=s
operations were effectively shut down for approximately five (5) days during
the month of November, 1999.

 

30.       The Plaintiffs were justified in
arranging to operate in Mexico through Plasticos Promex U.S.A., Inc.=s wholly owned subsidiary, Servicios Plasticos y Ensambles, S.A. de C.V.

 

31.       Alvarez=
conduct in attempting to utilize the corporation and its assets to extract
personal gain via the Lewis commission agreement was completely without right
or entitlement.  Said conduct would have
been a breach of his fiduciary duty to the corporations.

 

32.       The Plaintiffs had no adequate remedy at
law for the potential injuries described in paragraph 27. above
at the time suit was initiated.

 

Mr. Alvarez asserts that the above
findings of fact are not germane to the determination of the ownership
percentages in the U.S. corporation.  Appellees contend
that these findings of fact are germane to the ownership determinations of the
U.S. corporation. 
We agree with Appellees=
assertion.

Having considered
all of the evidence in the instant case, we find that there was sufficient
evidence to support the trial court=s
findings.  Further, we find that the
trial court=s
findings are not so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.  We find no abuse of discretion and therefore
overrule Issue Three.








In Issue Two, Mr.
Alvarez asserts that the testimony of Michael Bernstein on the ultimate issue
of ownership percentages was erroneously disregarded by the trial court.  Appellees contend
that the trial court did not abuse its discretion in denying the testimony of
Mr. Bernstein concerning the ownership percentages of the parties.

We review a trial
court=s
exclusion of expert testimony for an abuse of discretion.  Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718-19
(Tex. 1998).  A trial court abuses
its discretion if it acts without reference to any guiding rules or
principles.  E.I. du Pont de Nemours & Co., Inc. v. C.R. Robinson,
923 S.W.2d 549, 558 (Tex. 1995). 
A reviewing court cannot conclude that a trial court abused its
discretion if, in the same circumstances, it would have ruled differently or if
the trial court committed a mere error in judgment.  Id.

At trial, the
court stated that it would not allow Mr. Bernstein to testify as to the
ownership of the corporation since that was a legal question which the court
had to resolve.  The court however did
allow Mr. Bernstein to testify as to the capital contributions made towards the
corporation.  There is no dispute that
the Agreement would control the parties= ownership percentages.  Mr. Bernstein testified that he had never
seen the controlling Agreement.  As such,
his testimony regarding the ownership percentages of the parties lacked the
proper foundation.  We find that the
trial court did not abuse its discretion in not allowing Mr. Bernstein to
testify as to the ownership percentages of the corporation.  We therefore overrule Issue Two.

In Issue Four, Mr.
Alvarez challenges the trial court=s
decision to award attorney=s
fees to the Appellees.  Mr. Alvarez contends that because the trial
court erred in construing the Agreement, the award of attorney=s fees must be reversed.  In the alternative, Mr. Alvarez contends that
even if the construction of the Agreement was correct, the trial court applied
the wrong legal standard of prevailing party in its decision to award attorney=s fees to Appellees.








Under the Uniform
Declaratory Judgments Act, the trial court has discretion to award Areasonable and necessary attorney=s fees as are equitable and just.@ 
Tex.Civ.Prac.&Rem.
Code Ann. ' 37.009
(Vernon 1997); see Fisher, 88 S.W.3d at 816.  Absent a clear abuse of discretion, the trial
court=s
judgment will not be reversed on appeal. 
Fisher, 88 S.W.3d at 816-17, citing Leon Ltd., 862 S.W.2d
at 708.  An abuse of discretion occurs
when the trial court=s
judgment is without any reference to guiding principles, or is arbitrary or
unreasonable.   Fisher,
88 S.W.3d at 816-17, citing Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996).

At trial, the
parties stipulated to the reasonableness and necessity of attorney=s fees and costs as requested by both
sides.  The trial court awarded the
attorney=s fees to
the Appellees in the amount of $132,064.60 and an
additional $16,500 in the event of an appeal in which Appellees
prevail.  We find that the attorney=s
fees awarded by the trial court was not an abuse of its discretion.  We therefore overrule Issue Four.

For the reasons
stated above, we affirm the trial court=s
judgment.  

 

 

April
29, 2004  

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.











[1]
Specifically, Appellant attacks Findings of Fact Nos. 3, 5, 6, 7, 8, 10, 14,
17, 18, 26, 27, and Conclusions of Law Nos. 3 and 4.





[2]
Specifically, Appellant attacks Findings of Fact Nos. 17, 18, 19, 20, 21, 22,
23, 25, 28, 29, 30, 31, and 32, and Conclusions of Law Nos. 1, 3, and 7.