COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| INDUSTRIAL COMMUNICATIONS, INC., | § | No. 08-07-00083-CV |
| Appellant, | § | Appeal from |
| v. | § | 143rd District Court |
| WARD COUNTY APPRAISAL DISTRICT and WARD COUNTY APPRAISAL REVIEW BOARD, | § | of Ward County, Texas |
|  | § | (TC # 06-01-21130-CVW) |
| Appellees. | § |  |

## O P I N I O N

Industrial Communications, Inc. appeals from a summary judgment in favor of Ward County Appraisal District and Ward County Appraisal Review Board (the Taxing Entities). We sustain Issues One and Two; reverse the trial court's order granting summary judgment in favor of the Taxing Entities; reverse the trial court's order denying Industrial's motion for summary judgment; render judgment granting Industrial's motion for summary judgment on its declaratory judgment action; and render judgment awarding attorney's fees to Industrial.

### FACTUAL SUMMARY

In July of 2000, Industrial Communications (Industrial) finalized its purchase of the accounts receivable and equipment of Industrial Communications of Pecos, Inc. (ICP). The equipment included three radio towers located on Barstow Hill in Ward County.[1] Industrial's headquarters was located in Odessa, Texas while ICP was located in Pecos. In June of 2000, Industrial's general

_____

[1] The towers are known as the PRD tower, the Dowell tower, and the Bell tower.

manager, Charles E. Wood, began the process of registering Industrial's purchase of the three radio towers from ICP. On June 24, 2000, he accessed the internet and went to the Federal Communication Commission's website to register Industrial as the new owner of the three radio towers. Wood believed he had successfully registered Industrial as the owner of the three towers with the FCC, but he learned in 2006 that the online registration had been unsuccessful due to a software problem; consequently, the FCC did not show Industrial as the owner. Anita Miller, Industrial's Accounts Payable and Accounts Receivable Clerk, notified all customers and vendors of both Industrial and ICP of the address change when Industrial purchased ICP. Further, Industrial had an employee at the Pecos address from February 5, 2002 through June 30, 2003. Thereafter, Industrial made a change of address with the United States Post Office and requested that all mail sent to the Pecos address be forwarded to the Odessa address.

Beginning in tax year 2001, Industrial filed renditions on the property previously owned by ICP but the renditions did not include the three Barstow Hill radio towers. The renditions were accepted by Ward County, Industrial was taxed according to the rendered values, and Industrial timely paid its taxes. Sometime prior to April 1, 2004, Industrial's comptroller, Peggy Clemons, received a letter from Ward County Appraisal District advising Industrial about a law created by Senate Bill 340 which concerned the filing of business personal property renditions.[2] The letter advised that the new law, effective January 1, 2004, would impose tough penalties for failure to file a rendition with the appraisal district or for filing after the statutory deadline of April 15, 2004. Clemons thoroughly reviewed Industrial's depreciation schedules and discovered that the three Barstow Hill radio towers had been omitted and had never been rendered by either ICP or Industrial.

---

[2] The letter is undated and the summary judgment evidence does not show when the letter was sent by the Ward County Appraisal District or when it was received by Industrial.

On April 1, 2004, Clemons, on behalf of Industrial, prepared a business personal property rendition of taxable property listing the three Barstow Hill radio towers with a total value of $15,500[3] and submitted it to the Ward County Appraisal District. Ward County Appraisal District accepted the rendition and assessed the 2004 taxes on the three towers in accordance with the rendered values. In October of 2004, Industrial received a 2004 tax bill for the Barstow Hill radio towers and other property rendered by Industrial and it paid this bill on January 1, 2005. The 2004 taxes on the Barstow Hill radio towers totaled $339.97. The Appraisal District also used the 2004 values for the three radio towers in the 2005 notice of appraised value.

In November 2004, Industrial received a delinquent account notice for the Barstow Hill radio towers for the 2003 tax year. The notice was addressed to ICP but sent to Industrial's address in Odessa. This was the first notice Industrial had received regarding the 2003 property taxes for the Barstow Hill radio towers because the prior notices, dated May 8, 2003, had allegedly been sent to ICP at its address in Pecos.[4] The Appraisal District had obtained the ownership information and address listed on the prior notices from the Federal Communication Commission. According to this notice, the 2003 taxes due on the Barstow Hill radio towers was $6,826.52 because the Appraisal District showed the value of the three towers as $67,250 for the PRD tower, $74,750 for the Dowell tower, and $79,750 for the Bell tower. Although the Ward County Appraisal District accepted the 2004 rendition showing the total value of the three towers as $15,500, the 2003 appraised value of the towers was set at $221,750, a fourteen-fold increase. The 2003 taxes had become delinquent on February 1, 2004. Around November 15, 2004, Industrial received a notice of the Appraisal

---

[3] Two towers were listed at $5,000 each and the third tower had a listed value of $5,500.

[4] Anita Miller, who processes all mail for Industrial, stated in her summary judgment affidavit that before Industrial received the notice in November of 2004, "[n]o tax notice, bill, or any other communication regarding the 2003 taxes on the Barstow Hill radio towers was received at either the Pecos or Odessa addresses."

District's intent to sue. Like the delinquent account notice, the notice of intent to sue was addressed to ICP but it was mailed to Industrial's address in Odessa. Upon receipt of the notice of intent to sue, Clemons prepared a property tax notice of protest for the 2003 taxes, and in the cover letter, she complained about the Appraisal District's failure to provide notice. The Appraisal District and Appraisal Review Board refused to grant Industrial a hearing on its protest for the stated reason that the "deadline for filing a protest based on failure of the chief appraiser to deliver a notice to which the property owner is entitled has passed."

On January 4, 2006, Industrial filed suit against the Appraisal District and the Appraisal Review Board pursuant to Section 41.45(f) of the Tax Code seeking to compel the Appraisal Review Board to hold a hearing on its protest. Alternatively, Industrial sought a declaratory judgment that (1) the Texas Tax Code, as applied to Industrial, failed to provide due process; (2) the attempt to collect taxes, penalties, and interest from Industrial without adequate notice or a hearing violated Industrial's right to due process, and (3) the 2003 taxes assessed on the radio towers are void. Industrial filed a motion for summary judgment on all of its claims. The Appraisal District and the Appraisal Review Board filed a motion for summary judgment on the sole ground that Industrial had not exhausted the administrative remedies provided by the Property Tax Code. The trial court denied Industrial's motion for summary judgment and granted summary judgment in favor of the Appraisal District and the Appraisal Review Board.

**SUMMARY JUDGMENT**

Industrial presents two issues on appeal complaining that the trial court erred in granting the Taxing Entities' motion for summary judgment and denying Industrial's motion for summary judgment because taxes were assessed against Industrial's property without notice and a reasonable opportunity to be heard. The Taxing Entities respond that the trial court properly denied Industrial's

motion for summary judgment because the Appraisal District complied with all notice requirements under the Property Tax Code by delivering notice of the 2003 appraisal to the record owner of the property, ICP. Further, they contend that the trial court properly granted summary judgment in their favor because Section 41.411 provides the exclusive administrative remedy for lack of notice and Industrial failed to exhaust its administrative remedies under that section.

## *Standard of Review*

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Dow Chemical Company v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002). In a traditional summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Southwestern Electric Power Company v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Southwestern Electric*, 73 S.W.3d at 215. Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). All reasonable inferences must be resolved in favor of the non-movant. *Id*.

## *Taxpayer Entitled to Due Process*

Collection of a tax constitutes a deprivation of property; therefore, a taxing unit must afford a property owner due process of law. *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dept. of Bus. Regulation of Florida*, 496 U.S. 18, 36-7, 110 S.Ct. 2238, 2250-51, 110 L.Ed.2d 17 (1990); *Appraisal Review Board of the El Paso County Central Appraisal District v. Fisher*, 88

S.W.3d 807, 813 (Tex.App.--El Paso 2002, pet. denied). Due process affords a party the right to be heard before final assessment of the taxes; it does not detail the review mechanism. *Denton Central Appraisal District v. CIT Leasing Corporation*, 115 S.W.3d 261, 265-66 (Tex.App.--Fort Worth 2003, pet. denied). In cases involving taxation, due process is satisfied if the taxpayer is given an opportunity to be heard before some assessment board at some stage of the proceedings. *Id.*; *Fisher*, 88 S.W.3d at 813.

*Due Process under the Texas Tax Code*

Pursuant to Section 41.41 of the Tax Code, a property owner is entitled to protest before the appraisal review board several actions, including a determination of the appraised value of the owner's property. TEX.TAX.CODE ANN. § 41.41(a)(Vernon 2008). Additionally, a property owner is entitled to protest before the appraisal review board the failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which the property owner is entitled. TEX.TAX.CODE ANN. § 41.411(a)(Vernon 2008). If failure to provide or deliver the notice is established, the appraisal review board shall determine a protest made by the property owner on any other grounds of protest authorized by the Tax Code. TEX.TAX.CODE ANN. § 41.411(b)(Vernon 2008).

Under the version of Section 41.44 applicable to this case, a property owner who wishes to protest pursuant to Section 41.411 must file the protest before the date the taxes on the subject property become delinquent. Acts 2005, 79th Leg., R.S., ch. 829, § 1, 2005 Tex.Gen.Laws 2839 [current version found at TEX.TAX CODE ANN. § 41.44(c)(Vernon 2008)]. The property owner must comply with the payment requirements of Section 42.08[5] or the property owner forfeits the right to

---

[5] See TEX.TAX.CODE ANN. § 42.08(b)(Vernon 2008)(providing that the property owner must pay before the delinquency date the lesser of the amount of taxes due on the portion of the taxable value of the property not in dispute, or the amount of taxes due on the property under the order from which the appeal is taken).

a final determination of the protest.  *See* Acts 1985, 69th Leg., R.S., ch. 504, § 1, 1985 Tex.Gen.Laws 2089 [current version found at TEX.TAX.CODE ANN. § 41.411(c)(Vernon 2008].[6] The pre-2008 version of Section 41.411 gave most property owners the opportunity to be heard at some stage of the administrative proceeding, satisfying due process.  The issue in this case is whether the pre-2008 Tax Code provides due process for a property owner who is not given notice of the inclusion of property on the appraisal roll and the assessment of taxes until after the taxes have become delinquent.  The authors of one law review article have concluded that the pre-2008 version of Section 41.411 left open a small gap in which the Tax Code fails to provide adequate due process for a taxpayer who does not receive notice in time to take advantage of Section 41.411, and appropriate pre-Code remedies may still be available.  Farley P. Katz and Charles J. Muller III, *Procedural Rights and Remedies under the Texas Property Tax Code--A Guide to the Code, Recent Amendments, and Developing Case Law*, 18 St. Mary's L.J. 1209, 1232 (1987).  The 2007 amendment to Section 41.411(c) and the addition of Section 41.44(c-3) presumably close this gap, but the amendments do not apply to this case.

## *Exhaustion of Administrative Remedies*

We now consider whether the trial court properly granted summary judgment in favor of the Taxing Entities on their motion for summary judgment.  In the sole ground addressed to the merits

---

[6]  In 2007 while this appeal was pending, the Legislature amended Section 41.411(c) to provide that the delinquency date for purposes of Section 42.08(b) for the taxes on the property subject to a protest under this section is postponed to the 125th day after the date that one or more taxing units first delivered written notice of the taxes due on the property, as determined by the appraisal review board at a hearing under Section 41.44(c-3). TEX.TAX CODE ANN. § 41.411(c)(Vernon 2008).  However, the amendment applies only to an ad valorem tax protest filed on or after the effective date of the act, January 1, 2008. Acts 2007, 80th Leg., R.S., ch. 1106, § 4(c), 2007 TEX.GEN.LAWS 3738, 3739. Section 41.44(c-3) now permits a property owner to file a protest under Section 41.411 not later than the 125th day after the property owner, in the protest filed, claims to have first received written notice of the taxes in question. TEX.TAX CODE ANN. § 41.44(c-3)(Vernon 2008).  This amendment applies only to an ad valorem tax protest filed on or after the effective date of the Act, January 1, 2008. Acts 2007, 80th Leg., R.S., ch. 1106, § 4(c), 2007 TEX.GEN.LAWS 3738, 3739.

of Industrial's suit, the Taxing Entities alleged that Industrial cannot maintain its suit in the district court because it failed to exhaust its administrative remedies provided by the Tax Code. More specifically, the Taxing Entities argued that Industrial was required to file a protest pursuant to Section 41.411 and it was required to pay taxes on the property in accordance with Section 42.08 in order to maintain its suit. Industrial argues, as it did in the trial court, that the Tax Code does not provide it with any administrative remedies because it did not receive notice of the 2003 taxes until after the taxes had become delinquent, and therefore, a Section 41.411 protest was unavailable.

If an agency has exclusive jurisdiction to determine a matter, a litigant's failure to exhaust all administrative remedies before seeking judicial review of the administrative body's actions deprives the court of subject-matter jurisdiction over claims within the body's exclusive jurisdiction, and the court must generally dismiss such claims without prejudice. TEX.GOV'T CODE ANN. § 2001.171 (Vernon 2008); *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002); *MAG-T, L.P. v. Travis Central Appraisal District*, 161 S.W.3d 617, 624 (Tex.App.--Austin 2005, pet. denied); *see* TEX.GOV'T CODE ANN. § 311.034 (Vernon Supp.2008) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."). Taxing authorities have exclusive jurisdiction over tax disputes, and taxpayers must therefore exhaust their administrative remedies before seeking judicial review. *MAG-T*, 161 S.W.3d at 624; *see General Electric Credit Corporation v. Midland Central Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1991)(recognizing that taxpayer is required to exhaust administrative procedures before challenging tax assessment); *Webb County Appraisal District v. New Laredo Hotel,* 792 S.W.2d 952, 954-55 (Tex. 1990)(holding that taxpayer who failed to appear at administrative protest hearing was deemed to have failed to exhaust his administrative remedies, thus depriving district court of its jurisdiction to hear case); *ABT Galveston Ltd. Partnership v.*

*Galveston Central Appraisal District*, 137 S.W.3d 146, 157-58 (Tex.App.--Houston [1st Dist.] 2004, no pet.)(stating that taxpayer who did not timely file protest was deemed to have failed diligently to pursue or to exhaust its administrative remedies under Texas Property Tax Code, thus depriving district court of jurisdiction to hear claim); *see also* TEX.TAX CODE ANN. § 42.09(a)(Vernon 2008)(stating that remedies set forth in Texas Property Tax Code are exclusive except as provided by Subsection (b) of Section 42.09). An aggrieved party is excused from exhausting its administrative remedies under certain circumstances: (1) an administrative agency purports to act outside its statutory powers; (2) the issue presented is purely a question of law; (3) certain constitutional issues are involved; (4) the administrative remedies are inadequate, and the exhaustion of administrative remedies would cause irreparable injury; and (5) failure to provide the taxpayers notice of the appraised property's value deprives the taxing authority of jurisdiction and voids the appraisal. *MAG-T*, 161 S.W.3d at 625.

The Taxing Entities argue that the administrative remedies provided by the Tax Code are exclusive and Industrial failed to exhaust its administrative remedies because it did not file a protest pursuant to Section 41.411 of the Tax Code. But as we have already noted, such a protest must be filed before the date on which the taxes on the subject property become delinquent. It is undisputed that until November of 2004 Industrial did not have actual notice that the Barstow Hill radio towers had been included on the 2003 tax roll or that taxes had been assessed on the 2003 appraised value. By the time Industrial received notice from the Taxing Entities, the taxes were already delinquent. Thus, the remedy provided by Section 41.411 was unavailable to Industrial.

The Taxing Entities concede the lack of notice but argue that Industrial is presumed to know that it owed taxes on the three radio towers, and therefore, it had constructive notice that some amount of tax was due by the delinquency date. Given this constructive notice, the Taxing Entities

reason that Industrial cannot maintain its suit in the district court unless it made diligent efforts to protest and exhausted its administrative remedies. In support of this argument, they cite *Mag-T, L.P. v. Travis Central Appraisal District*, 161 S.W.3d 617 (Tex.App.--Austin 2005, pet. denied) and *Denton Central Appraisal District v. CIT Leasing Corporation*, 115 S.W.3d 261 (Tex.App.--Fort Worth 2003, pet. denied).

In *Mag-T*, the taxpayers owned commercial property in Travis County. *Mag-T*, 161 S.W.3d at 621. The appraisal district sent notices of appraised property value to the taxpayers for the 2003 tax year. *Id.* at 623. The taxpayers did not protest the appraisal values and the appraisal roll was approved and certified. After the tax assessor sent tax statements, the taxpayers timely filed amnesty renditions by the December 1, 2003 deadline after the property had already been assessed for taxes.[7] Consequently, the appraisal district prepared supplemental appraisal records that were approved by the appraisal review board and issued new appraisal notices for the 2003 tax year that included increased property appraisals encompassing the previously omitted property. The new notices of appraisal, dated January 6, 2004, were received by the taxpayers around January 14. The taxpayers did not file protests but instead sued the appraisal district, the appraisal review board, and the tax-assessor collector asserting that the taxing authorities had improperly increased the property taxes after the appraisal roll had been certified. The taxpayers argued they were excused from exhausting their administrative remedies under various exceptions. Among other things, the taxpayers complained that the notice they received was defective. The district court found that the taxpayers had not exhausted their administrative remedies and dismissed the suit for lack of jurisdiction. The

---

[7] In 2003, the Legislature amended Section 22.23(c) of the Tax Code to encourage property owners to submit tangible personal property for taxation that had been previously omitted from the appraisal rolls. Acts 2003, 78th Leg., ch. 1173, § 6, 2003 TEX.GEN.LAWS 3353, 3355. If a taxpayer filed a rendition statement of the omitted property before December 1, 2003, the chief appraiser could not add the value of the omitted property to the 2001 or 2002 appraisal roll. *Id.*

Austin Court of Appeals affirmed, finding that none of the exceptions to the exhaustion of administrative remedies doctrine excused the taxpayers' failure to exhaust their administrative remedies. *Id.* at 625-35. The court of appeals specifically held that the taxpayers were provided with statutory protections under which they could protest objectionable taxing authority actions but chose not to avail themselves of their administrative remedies. *Id.* 631-32. Further, the court refused to accept the taxpayers' argument "that would permit a property owner to do nothing when confronted with an obviously erroneous tax bill." *Id.* at 632.

The instant case is factually distinguishable. In *Mag-T*, the taxpayers received notice in time to file a protest but they simply chose not to pursue their administrative remedies. Here, Industrial could not file a Section 41.411 protest because it did not get notice that the property had been included on the 2003 appraisal roll until after the taxes had become delinquent. *Mag-T* does not support the Taxing Entities' argument that Industrial had constructive notice that it owed some amount of taxes before the due date and failed to exhaust its administrative remedies.

The Taxing Entities also rely on *Denton Central Appraisal District v. CIT Leasing Corporation*, 115 S.W.3d 261 (Tex.App.--Fort Worth 2003, pet. denied). There, the taxpayer, CIT Leasing, owned an airplane that was appraised for taxation by the appraisal district for the 1998 tax year. *Id.* at 263. In November of 1998, the tax office informed CIT that the property had been added to the 1998 appraisal roll and informed CIT of the appraised value, the amount of taxes owed, and the delinquency date for those taxes. CIT paid the taxes and in March of 2000, it filed a notice of protest alleging that it had not been provided with notice of the appraised value as required by Section 25.19 of the Tax Code. The appraisal review board conducted a hearing on the protest and determined that it was untimely. CIT filed suit in district court seeking to have the aircraft removed from the appraisal roll. CIT filed a no-evidence motion for summary judgment, contending there

was no evidence that the appraisal district had sent it the notice of appraised value required under Section 25.19. The taxing authorities filed a motion for traditional summary judgment alleging that CIT's failure to exhaust its administrative remedies precluded judicial review. The trial court granted CIT's motion and ordered the appraisal district to remove the property from the 1998 appraisal roll. The trial court also denied the appraisal district's motion for summary judgment. The Fort Worth Court of Appeals found that CIT had administrative remedies available to it under the Tax Code because it received a tax assessment in November of 1998 and the delinquency date was not until April 30, 1999. *Id.* at 265. CIT did not file a protest until March of 2000, more than ten months after the delinquency date. Thus, the court of appeals concluded that CIT, by failing to exhaust its administrative remedies, forfeited its right to a final determination of its protest and precluded judicial review of the 1998 tax assessment on the aircraft. *Id.* at 266. In contrast with the facts of this case, CIT Leasing received notice well in advance of the delinquency date and it had ample time to take advantage of the protest procedures provided by the Tax Code. Industrial did not receive notice until after the delinquency date. Like *Mag-T*, *CIT Leasing* does not support the Taxing Entities' argument that Industrial had constructive notice that it owed taxes on the towers and failed to exhaust its administrative remedies.

The undisputed summary judgment evidence established that Industrial did not have notice that the Barstow Hill radio towers had been included on the 2003 appraisal roll or that taxes had been assessed until after the taxes became delinquent on February 1, 2004. We thus conclude on these facts, that the Tax Code did not provide Industrial with any remedies. The trial court erred in granting summary judgment in favor of the Taxing Entities on the ground that Industrial failed to exhaust its administrative remedies.

*Industrial's Motion for Summary Judgment*

We now consider whether the trial court properly denied Industrial's motion for summary judgment. By its suit, Industrial sought two alternative forms of relief: (1) judgment compelling the Appraisal Review Board to hold a hearing pursuant to Section 41.45(f) on Industrial's protest of the appraised values; or (2) a declaratory judgment that the taxes were void because they had been imposed without due process.

*Section 41.45(f)*

Section 41.45(f) provides that:

A property owner *who has been denied a hearing to which the property owner is entitled under this chapter* may bring suit against the appraisal review board by filing a petition or application in district court to compel the board to provide the hearing. If the property owner is entitled to the hearing, the court shall order the hearing to be held and may award court costs and reasonable attorney fees to the property owner. [Emphasis added.]

TEX.TAX CODE ANN. § 41.45(f)(Vernon 2008). We have already determined that Industrial was not entitled to a hearing under Section 41.411 because it did not receive notice until after the 2003 taxes had become delinquent, and therefore, Industrial could not timely file a protest under that section. Industrial's protest made pursuant to Section 41.41 was untimely because it was made after the taxes had been assessed and had become delinquent. *See* Acts 1999, 76th Leg., R.S., ch. 631, § 12, 1999 TEX.GEN.LAWS 3191, 3197 [current version found at TEX.TAX CODE ANN. § 41.44 (Vernon 2008)]. The Tax Code, as it existed prior to 2008, contains no procedural mechanisms to provide Industrial a hearing on its protest. Thus, the trial court properly denied Industrial's motion for summary judgment on this cause of action.

*Declaratory Judgment*

Industrial also sought a declaratory judgment that (1) the Texas Tax Code, as applied to Industrial, failed to provide due process; (2) the attempt to collect taxes, penalties, and interest from Industrial without adequate notice or a hearing violated Industrial's right to due process, and (3) the 2003 taxes assessed on the radio towers are void. It is undisputed that Industrial's property was included on the 2003 appraisal roll and taxes were assessed on the property without notice to Industrial until after the taxes had become delinquent. Further, the Taxing Entities refused all of Industrial's requests for a hearing on the late notice or the merits of the dispute about the values assigned to the Barstow Hill radio towers. Nevertheless, the Taxing Entities responded to Industrial's motion for summary judgment by arguing they were not obligated to provide notice

under the Tax Code because Industrial failed to put them on notice that it owned the three radio towers or notify them of its change of address.

Exaction of a tax constitutes a deprivation of property, and a taxing unit must afford a property owner due process of law and must provide meaningful backward-looking relief to rectify any unconstitutional deprivation. *McKesson Corporation v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18, 36, 110 S.Ct. 2238, 2250, 110 L.Ed.2d 17 (1990); *Appraisal Review Board of the El Paso County Central Appraisal District v. )(,* 88 S.W.3d 807 (Tex.App.--El Paso 2002, pet. denied). At a minimum, due process in this context requires notice and a fair opportunity to be heard before deprivation of a protected property interest. *McKesson*, 496 U.S. at 37, 110 S.Ct. at 2250. In tax cases, due process is satisfied if the taxpayer is given an opportunity to be heard before an assessment board at some stage of the proceedings. *A.B.T. Galveston Ltd.*, 137 S.W.3d at 155; *Denton Central Appraisal District*, 115 S.W.3d at 266.

The Tax Code requires the chief appraiser to provide property owners with written notice of the appraised value of the property owner's property if the property was not on the appraisal roll in the preceding year. TEX.TAX CODE ANN. § 25.19(a)(3)(Vernon 2008). The Taxing Entities concede that sending notice to ICP at the Pecos address did not provide Industrial with the required notice, but they maintain that Industrial was not entitled to notice because it failed to inform the Appraisal District that it owned the property by properly recording its interest or by rendering the property for taxation. The Taxing Entities cite *Dallas Central Appraisal District v. Brown*, 19 S.W.3d 878 (Tex.App.--Dallas 2000, no pet.) in support of their argument that Industrial was not entitled to notice.

In *Dallas Central Appraisal District*, the Browns filed suit in district court challenging the denial of a property tax homestead exemption for tax years 1993 through 1996. The Browns

purchased the home in 1992 but they did not record their warranty deed. They lived in the home continually until 1998 and paid property taxes but did not file an application for a property tax homestead exemption. The prior homeowner had been granted a homestead exemption and the Browns paid property taxes based on the prior owner's exemption. In 1997, the Dallas Central Appraisal District learned the Browns had not applied for a homestead exemption and canceled the prior owner's exemption. The appraisal district sent notice of the cancellation to the previous owner who delivered the notice to the Browns. On February 18, 1998, the Browns filed an application for a homestead exemption requesting an exemption for the tax years 1993 through 1998. The appraisal district granted the exemption for 1997 and 1998 but denied it for the previous years. The Browns filed a notice of protest with the appraisal review board and recorded their warranty deed on July 6, 1998. The appraisal review board denied the protest for the years 1993 through 1996 and the Browns filed suit in district court. The district court granted summary judgment in favor of the Browns and ordered that they were entitled to a homestead exemption for tax years 1993 through 1996. The Dallas Court of Appeals reversed the summary judgment because the Tax Code provides that a taxpayer may not receive an exemption for a year in which the taxpayer fails to file a timely application. TEX.TAX CODE ANN. § 11.43(e)(Vernon 2008). The evidence showed the Browns did not file an application until 1998. An appraisal district has a nondiscretionary duty to remove erroneous exemptions if discovered within five years. TEX.TAX CODE ANN. § 11.43(i)(Vernon 2008); *Brown*, 19 S.W.3d at 880. Because the Browns did not comply with the statutory scheme for claiming a homestead property tax exemption for the years 1993 through 1996, they were not entitled to a homestead exemption for these years and the chief appraiser was under a statutory duty to reappraise the property for the period of time the Browns erroneously benefitted from the prior owner's exemption. *See Brown*, 19 S.W.3d at 880. The Browns argued that the appraisal district

could not deny the claimed exemption for 1993 through 1996 because the appraisal district had not complied with Section 25.19(g) of the Tax Code requiring the appraisal district to send notice to the property owner if the ownership of the property changed during the preceding year. The Court of Appeals rejected this argument because the Browns' construction of the Tax Code was unreasonable as it would bar an appraisal district from removing an erroneous exemption as long as the current property owners were successful in hiding the most recent conveyance of the property. *Id.* at 882. The court went on to hold that where the taxpayers failed to record their warranty deed, the appraisal district could not be faulted for any failure to comply with Section 25.19(g). *Id.*

*Brown* is distinguishable from the instant case because the Browns did not file suit asserting a due process violation arising from a lack of notice and no opportunity to protest an action of the taxing authorities. The taxpayers there had notice of the appraisal district's removal of the exemption in time to file a protest with the appraisal review board. Further, the Tax Code placed a duty on the Browns to timely file an application seeking the homestead exemption. The penalty for failure to file that application is the removal of the homestead exemption to which the Browns were not entitled. In contrast, the only statutorily-imposed requirement Industrial failed to perform, filing a rendition, does not result in the imposition of taxes without due process or the removal of any exemption to which Industrial was entitled under the Tax Code.

A person is required to render for taxation all tangible personal property used for the production of income that the person owns. TEX.TAX CODE ANN. § 22.01 (Vernon 2008). The Tax Code imposes substantial penalties on a person who fails to render property for taxation. TEX.TAX CODE ANN. § 22.28 (a)(Vernon 2008)(failure to timely file a rendition statement subjects the person to a penalty in an amount equal to ten percent of the total amount of taxes imposed on the property

for that year by taxing units participating in the appraisal district).[8]  The chief appraiser may waive the penalty if the chief appraiser determines that the person exercised reasonable diligence to comply with or has substantially complied with the requirements of Chapter 22 of the Tax Code.  TEX.TAX CODE ANN. § 22.28 (Vernon 2008).  Nothing in the Tax Code indicates that failure to render property constitutes a forfeiture of the right to due process.  The Taxing Entities do not cite any authority for their argument that a property owner's failure to render property constitutes a waiver of the property owner's constitutional right to due process.  In the absence of any supporting authority, we decline to hold that the notice and hearing requirements of the Tax Code are contingent on the filing of a rendition statement.  The Taxing Entities' argument that Industrial waived its right to due process by failing to render the Barstow Hill radio towers is without merit.

The Taxing Entities also maintain that Industrial was not entitled to notice because it failed to advise them of its address change.  While it is certainly advisable for a property owner to keep the taxing authorities informed of any change of address, the Tax Code does not require a property owner to inform the appraisal district of his current address nor does it provide that failure to do so waives the right to notice.  The Tax Code does not state that the appraisal district's obligation to provide the notice required by Section 25.19 is contingent upon the property owner notifying the tax assessor of its current address.  The Taxing Entities do not cite any cases holding that a property owner forfeits his right to due process if he fails to inform the taxing authorities of his current address.  The United States Supreme Court has held that a taxpayer's failure to comply with a statutory obligation to keep his address updated did not forfeit his right to constitutionally sufficient notice.  *See Jones v. Flowers*, 547 U.S. 220, 232, 126 S.Ct. 1708, 1717, 164 L.Ed.2d 415 (2006).

---

[8]  The statute authorizing imposition of the penalty became effective on January 1, 2004.  Thus, Industrial was not subject to a penalty for failure to render the radio towers in the prior years.

The Taxing Entities' argument is also undercut by Section 41.411 which affords a property owner the right to protest the failure of the chief appraiser or review board to provide or deliver a required notice to the property owner. A taxpayer's ability to seek relief pursuant to Section 41.411 is not contingent on the property owner keeping the taxing authorities informed of his current address. If the Taxing Entities are correct that a property owner forfeits his right to due process if he does not keep the taxing authorities informed of his current address, the remedy provided by Section 41.411 would be limited to those cases where the taxpayer is not at fault.

Finally, the Taxing Entities urge that Industrial waived its right to due process because it failed to properly record its property interest in the three radio towers. Again, the Taxing Entities cite no authority in support of their argument that a property owner forfeits its right to due process by not recording its ownership of the subject property. If the evidence established that a taxpayer affirmatively attempted to hide its ownership of the property and avoid paying taxes, an argument could be made that the taxpayer intentionally relinquished its constitutional right to due process. Waiver is defined as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003), *quoting Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Jernigan*, 111 S.W.3d at 156; *Motor Vehicle Board v. El Paso Independent Automobile Dealers Association, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999). There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. *Jernigan*, 111 S.W.3d at 156. Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, the question becomes one of law. *Id.* at 156-57. Here, there is no evidence that

Industrial attempted to hide its ownership of the Barstow Hill radio towers. Instead, the summary judgment evidence established that Industrial made a diligent effort to record its interest in the property but was unsuccessful due to a software problem. Industrial presented the affidavits of Charles Wood, general manager of Industrial, and Peggy Clemons, comptroller of Industrial, in support of its motion for summary judgment. On June 24, 2000, Wood attempted to register Industrial as the new owner of the Barstow Hill radio towers. Industrial attached a printout from that online registration effort dated June 24, 2000 and showing Industrial as the registrant. Wood believed he had successfully registered Industrial's ownership of the towers on the FCC website. Clemons also believed the radio towers had been registered with the FCC at the time of the purchase in July of 2000. After this lawsuit was filed, Clemons attempted to confirm the registration of the radio towers with the FCC. She contacted the FCC and was told that Industrial's registration had not been acknowledged and the towers remained registered to ICP. Between January 2006 and March 2006, Clemons attempted to register the towers to Industrial three different times. Each time she believed the registration had been successfully completed but it was not. She worked with the FCC online and by telephone and the FCC finally determined that the registration had not been completed because Industrial needed JAVA software to complete the registration online. The towers were finally registered to Industrial on March 9, 2006. Under these undisputed facts, we decline to hold that Industrial forfeited or waived its right to due process.

Industrial conclusively established that it did not receive notice of the inclusion of the three Barstow Hill radio towers on the 2003 appraisal roll and it did not have an opportunity to protest the appraised values of the property before taxes were assessed on the property. Because Industrial did not receive notice prior to the taxes on the property becoming delinquent, the remedy provided by Section 41.411 is unavailable to Industrial and the Tax Code does not provide any other backward-

looking relief to rectify the unconstitutional deprivation. Accordingly, we conclude that Industrial conclusively established that its right to due process was violated. The trial court erred by denying Industrial's motion for summary judgment on its declaratory judgment action.

We must now determine what remedy is appropriate to rectify the due process violation. Industrial asks that we render a judgment declaring that the Taxing Entities' failure to provide due process renders the assessed taxes and associated penalties void. On the other hand, the Taxing Entities point to Section 25.19(d) of the Tax Code which expressly provides that a taxpayer's failure to receive notice does not affect the validity of the appraisal or the imposition of any tax on the basis of the appraisal. TEX.TAX CODE ANN. § 25.19(d)(Vernon 2008). Application of Section 25.19(d) is reasonable where a taxpayer has an opportunity to protest a lack of notice pursuant to Section 41.411 and other Tax Code provisions permit the correction of the records and issuance of supplemental tax bills after a taxpayer has been given an opportunity to be heard. But if we apply Section 25.19(d) literally, this taxpayer is left without a remedy for a due process violation. The pre-2008 version of the Tax Code simply does not provide a remedy for the situation presented by this case. Accordingly, we find that Section 25.19(d) is inapplicable to these unique facts.

Given the unavailability of any remedies provided by the Tax Code, it is appropriate to look to the equitable remedies available in cases decided prior to enactment of Section 41.411. *See, e.g.*, *Appraisal Review Board of the El Paso County Central Appraisal District v. Fisher*, 88 S.W.3d 807, 813 (Tex.App.--El Paso 2002, pet. denied)(holding that because taxpayer did not receive notice or have an opportunity for a hearing to contest the appraisal, he was denied due process and the taxes and penalties assessed based on the appraisal are void); *Harris County Appraisal District v. Dincans*, 882 S.W.2d 75, 79 (Tex.App.--Houston [14th Dist.] 1994, writ denied)(holding that, under the law as it existed at the time, the taxpayer was not required to exhaust administrative remedies because

it did not receive notice of appraised value); *Harris County Appraisal Review Board v. General Electric Corporation*, 819 S.W.2d 915, 920 (Tex.App.--Houston [14th Dist.] 1991, writ denied)(holding that appraisal district never acquired jurisdiction over the increase in value of the property where taxpayer filed a chapter 41 protest); *Bank of America National Trust & Saving Association v. Dallas Central Appraisal District*, 765 S.W.2d 451, 454 (Tex.App.--Dallas 1988, writ denied)(holding that, under the law as it existed at the time, the appellant was denied procedural due process); *New v. Dallas Appraisal Review Board.*, 734 S.W.2d 712, 716 (Tex.App.--Dallas 1987, writ denied)(holding that an appraisal district must deliver notice of appraised value before it obtains jurisdiction to increase a value). Because Industrial did not receive notice of the inclusion of the Barstow Hill radio towers on the 2003 tax roll and it did not have an opportunity to protest the 2003 appraisals on that property, we conclude that the 2003 taxes assessed on the radio towers and the associated penalties are void. *Fisher*, 88 S.W.3d at 813. Issues One and Two are sustained.

### ATTORNEY'S FEES

In its third issue, Industrial asserts that it was entitled to attorney's fees under the Declaratory Judgments Act. The Act provides that the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 2008). The granting or denial of attorney's fees in a declaratory judgment action is within the trial court's discretion and is not dependent on a finding that a party substantially prevailed. *Barshop v. Medina County Underground Water Conservation District*, 925 S.W.2d 618, 637 (Tex. 1996). Article 37.009 imposes four limitations on the court's discretion: the fees awarded must be reasonable and necessary, which are matters of fact, and they must be equitable and just, which are matters of law. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Abraxas Petroleum Corporation v. Hornburg*, 20 S.W.3d 741, 762 (Tex.App.--El Paso 2000, no pet.). Because the grant

or denial of attorneys' fees is within the sound discretion of the trial court, its judgment will not be disturbed on appeal in the absence of a clear showing that it abused its discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985); *Abraxas*, 20 S.W.3d at 762. A trial court abuses its discretion if its decision is arbitrary, unreasonable, or if the court acted without reference to guiding legal rules and principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997); *Abraxas*, 20 S.W.3d at 762. In reviewing a fee award under the Act, we must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust. *Bocquet*, 972 S.W.2d at 21; *Abraxas*, 20 S.W.3d at 762-63. Conversely, in reviewing a trial court's decision to not award fees, we must examine whether the complaining party established not only that the fees sought are reasonable and necessary, but also that the award is equitable and just. *Abraxas*, 20 S.W.3d at 763.

The Taxing Entities argue that Industrial is not entitled to attorney's fees under the Declaratory Judgment Act because it did not prevail in the trial court. An award of attorney's fees under the Act is not dependent on a finding that a party substantially prevailed. *Barshop*, 925 S.W.2d at 637. We have determined that Industrial should have prevailed on its claim for declaratory relief. The Taxing Entities did not controvert the evidence offered by Industrial showing that a reasonable and necessary attorney's fee for trial is $15,713, for appeal to this Court is $10,000, and for appeal to the Texas Supreme Court is $7,500. Industrial argues that an award of attorney's fees is equitable and just under the circumstances of this case because it has incurred substantial attorney's fees to protect its due process rights even though the tax savings will likely be less than $10,000. Although not economical for it to do so, Industrial has illustrated a gap in the Tax Code which has been closed, albeit too late for Industrial to benefit. Other taxpayers caught in this same gap will likely benefit from Industrial's decision to prosecute this case. In the absence of any

argument that awarding attorney's fees to Industrial is not equitable and just, we conclude that the trial court abused its discretion by failing to award attorney's fees to Industrial. Issue Three is sustained.

## CONCLUSION

Having sustained Issues One and Two, we render judgment declaring that Industrial's right to due process was violated because it did not receive notice of the appraisals or the imposition of taxes on the Barstow Hill radio towers and it did not have an opportunity to protest the appraisals before taxes were imposed on the property. We render judgment declaring void the 2003 taxes assessed on the three Barstow Hill radio towers and the associated penalties. Having sustained Issue Three, we render judgment awarding attorney's fees to Industrial in the amount $15,713 for trial, $10,000 for appeal to this Court, and $7,500 in the event of appeal to the Texas Supreme Court.

June 3, 2009

<span style="margin-left: 50%;">_____</span>

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating