

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00147-CV

CITY OF ALEDO                                                          APPELLANT

V.

TODD C. BRENNAN AND VALERIE                                           APPELLEES
S. SMITH, FRANK GALLISON AND
NANETTE GALLISON, REBECCA
HANLEY, GORDON HIEBERT AND
KIMBERLY HIEBERT, WILLIAM
HOOD AND LEONILA HOOD,
LAYNE KASPER AND JESSICA
KASPER, JAMES KITCHEN AND
MARTHA KITCHEN, SHAUN
KRETZSCHMAR AND NATALIE
KRETZSCHMAR, SCOTT
MITCHELL AND LESLIE
MITCHELL, EVAN PETERSON AND
GAYLE PETERSON, BRIAN
STAGNER AND AMY STAGNER,
STEVEN TOMHAVE AND JETTY
TOMHAVE, AND ROBERT WOOD
AND MARY FRANCES WOOD

----------

AND

**NO. 02-14-00153-CV**

TODD C. BRENNAN AND VALERIE S. SMITH, FRANK GALLISON AND NANETTE GALLISON, REBECCA HANLEY, GORDON HIEBERT AND KIMBERLY HIEBERT, WILLIAM HOOD AND LEONILA HOOD, LAYNE KASPER AND JESSICA KASPER, JAMES KITCHEN AND MARTHA KITCHEN, SHAUN KRETZSCHMAR AND NATALIE KRETZSCHMAR, SCOTT MITCHELL AND LESLIE MITCHELL, EVAN PETERSON AND GAYLE PETERSON, BRIAN STAGNER AND AMY STAGNER, STEVEN TOMHAVE AND JETTY TOMHAVE, AND ROBERT WOOD AND MARY FRANCES WOOD

APPELLANTS

V.

CITY OF WILLOW PARK, TEXAS, PARKER COUNTY APPRAISAL DISTRICT, PARKER COUNTY APPRAISAL REVIEW BOARD, CITY OF ALEDO, TEXAS, AND LARRY HAMMONDS IN HIS OFFICIAL CAPACITY AS PARKER COUNTY TAX ASSESSOR/COLLECTOR

APPELLEES

----------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY
TRIAL COURT NO. CV10-0429

----------

2

# MEMORANDUM OPINION[1]

----------

These consolidated accelerated appeals involve assessed back property taxes for the tax years 2003 through 2007 for properties in the City of Aledo, Texas, and the City of Willow Park, Texas (collectively, the Cities). Through an agreed interlocutory appeal, the City of Aledo challenges the trial court's order denying its motion for summary judgment. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 1051, § 1, 2005 Tex. Gen. Laws 3512, 3513 (former Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d)).[2] The Taxpayers[3] bring an interlocutory appeal from the trial court's order denying their motion to certify a class action under Texas Rule of Civil Procedure 42. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (West Supp. 2015). We affirm the trial court's orders.

---

[1]*See* Tex. R. App. P. 47.4.

[2]This former version of section 51.014(d) was repealed in 2011 as to suits filed on or after September 1, 2011. *See* Act of May 25, 2011, 82nd Leg., R.S. ch. 203, § 6.01, 2011 Tex. Gen. Laws 758, 761. The original petition in the underlying case was filed on March 18, 2010. Rule of appellate procedure 28.2, which governs agreed interlocutory appeals in civil cases, applies to this case. *See* Tex. R. App. P. 28.3 cmt. ("Rule 28.2 applies only to appeals in cases that were filed in the trial court before September 1, 2011.").

[3]The term "Taxpayers" as used herein refers to the following parties named in this suit: Todd C. Brennan and Valerie S. Smith, Frank Gallison and Nanette Gallison, Rebecca Hanley, Gordon Hiebert and Kimberly Hiebert, William Hood and Leonila Hood, Layne Kasper and Jessica Kasper, James Kitchen and Martha Kitchen, Shaun Kretzschmar and Natalie Kretzschmar, Scott Mitchell and Leslie Mitchell, Evan Peterson and Gayle Peterson, Brian Stagner and Amy Stagner, Steven Tomhave and Jetty Tomhave, and Robert Wood and Mary Frances Wood.

## I. Background

The Taxpayers own real property located within the territorial boundaries of either the City of Aledo or the City of Willow Park, both of which are in Parker County, Texas. Larry Hammonds is the chief appraiser for the Parker County Appraisal District. *See* Tex. Tax Code Ann. § 6.05 (West 2015). The Cities contracted with the Parker County Appraisal District to serve as their tax collector. *See id.* § 6.24(a) (West 2015). As a result, Hammonds also serves as the Cities' tax collector. *See Brennan v. City of Willow Park*, 376 S.W.3d 910, 915 n.2 (Tex. App.—Fort Worth 2012, pet. denied) (op. on reh'g).

For each tax year, the chief appraiser prepares an appraisal roll listing each property taxable in the appraisal district and then a separate appraisal roll for each taxing entity for which he appraises the property. *See* Tex. Tax Code Ann. §§ 25.01, 26.01 (West 2015). For the relevant tax years of 2003 through 2007, the Taxpayers received tax bills from the Parker County Appraisal District for all taxing entities in Parker County except the Cities. In 2008, Hammonds realized that the tax bills for the years 2003 through 2007 that had been sent by the Parker County Appraisal District to the Taxpayers and paid by the Taxpayers had erroneously omitted city taxes. On October 3, 2008, Hammonds sent the Taxpayers a "Notice of Omitted Property Determination." The notice provided in pertinent part as follows:

> This Notice is provided pursuant to the requirements of Texas Tax Code Sec. 25.21, which requires the chief appraiser, if he discovers that real property was omitted from an appraisal roll in any one of the

4

five preceding years, to add the appraised value of the omitted property to the appraisal records as of January 1 of each year that it was omitted. Please be advised that the City of Aledo [or the City of Willow Park] has informed me that the property described above was located within its jurisdiction but was not included on its appraisal roll for the tax years described on the attached tax statement. Therefore, the property value must be supplemented to the City's appraisal roll and City of Aledo [or City of Willow Park] taxes collected for each year that it was omitted.

You have a right to appeal this determination to the Parker County Appraisal Review Board (ARB). To appeal, you must file a WRITTEN protest with the ARB before **November 3, 2008.** Enclosed is a protest form to send the appraisal district. . . .

The total tax shown is due upon receipt and will be delinquent if not paid before **February 1, 2010.**

Hammonds attached to each "Notice of Omitted Property Determination" a supplemental tax bill indicating what the owner's taxes for the years 2003 through 2007 were based on the supplemental assessment.

Some of the Taxpayers—the Hieberts and the Kretzschmars—filed protests.[4] The Parker County ARB entered orders on the protests on December 16, 2008. Each of the orders stated that based on the evidence, the Parker County ARB determined that "[t]he subject property was omitted from the city's appraisal roll and meets the requirements of Section 25.21 for back assessment."

---

[4]Even though the Hieberts and the Kretzchmars were the only parties to this suit to file protests, several other affected property owners not parties to this suit filed protests. In each of these protests, the Parker County ARB entered orders identical to those entered in the Hieberts' and the Kretzchmars' protests.

5

On December 9, 2008, the Parker County ARB approved the supplemental appraisal records for the 2008 tax year. The order approving the supplemental appraisal records provided,

**ORDER APPROVING SUPPLEMENTAL
APPRAISAL RECORDS FOR 2008**

On December 9, 2008, the Appraisal Review Board of Parker County, Texas, met to approve supplemental appraisal records for tax year 2008.

The board finds that the supplemental records, as corrected by the chief appraiser according to the orders of the board, should be approved and added to the appraisal roll for the district.

The board therefore APPROVES the supplemental records as corrected.

The chairman of the Parker County ARB signed the order.

With the exception of Brennan and Smith, all of the Taxpayers paid the taxes before March 2010. In March 2010, the City of Willow Park brought suit against Brennan and Smith to collect taxes for the years 2003 through 2007. Brennan and Smith counterclaimed, the rest of the Taxpayers intervened, and the Taxpayers joined as third parties the City of Aledo, the Parker County Appraisal District, the Parker County ARB, Hammonds in his official capacity as Parker County Tax Assessor/Collector, and the members of the Parker County ARB in their official capacities.[5] The Taxpayers asserted counterclaims and third-party claims for declaratory judgment, injunctive relief, and mandamus relief against the City of Willow Park, the City of Aledo, the Parker County Appraisal

_____

[5]The members of the Parker County ARB are not parties to this appeal.

6

District, the Parker County ARB (collectively, the Government Entities), Hammonds, and the members of the Parker County ARB (collectively, the Government Officials). The Taxpayers sought declaratory relief as to the impropriety of the Government Entities' and Government Officials' actions, as well as a refund of the taxes they paid to the Cities for the tax years 2003–2007. The Taxpayers also filed a motion to certify a class action of "no less than 250" property owners in the Cities who, in 2008, were assessed city property taxes on their properties for the tax years 2003 through 2007.

The Government Entities and Hammonds filed pleas to the jurisdiction, alleging that that the Taxpayers had failed to exhaust their administrative remedies, and that, in any event, the Government Entities and Hammonds were entitled to governmental immunity. *Brennan*, 376 S.W.3d at 915. The trial court granted the pleas to the jurisdiction and dismissed with prejudice the Taxpayers' counterclaims and third-party claims. *Id.* The Taxpayers appealed. *Id.* This court determined that the trial court erred in granting the pleas to the jurisdiction on both grounds, reversed the trial court's judgment, and remanded the Taxpayers' claims to the trial court. *Id.* at 928.

After remand, the City of Aledo filed a motion for summary judgment alleging that the assessed back taxes were not invalid or void on several grounds. The trial court heard the City of Aledo's motion and the Taxpayers' motion to certify a class action on the same day. The City of Willow Park

7

nonsuited its collection suit because by then all of its taxes had been paid.[6]  The trial court rendered orders denying the City of Aledo's motion for summary judgment and the Taxpayers' motion to certify a class action.    Both the Taxpayers and the City of Aledo appeal the denial of their respective motions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3); Tex. R. App. P. 28.2.

## II.  This Court's Prior Opinion

The Taxpayers argue in the context of their class certification appeal that the facts pled to defeat the Government Entities and Hammonds's jurisdictional arguments in the prior appeal support "an eventual outcome" in their favor. Accordingly, we will summarize the arguments and holding of our prior opinion as they inform our analysis of this appeal.

Pertinent to this appeal is our resolution of the Government Entities and Hammonds's contention in the prior appeal that tax code section 42.09,[7] entitled "Remedies Exclusive," barred the Taxpayers' claims because they failed to exhaust their administrative remedies as set forth in chapter 41 of the tax code concerning either the October 28, 2008 determination of omitted property, the enclosed supplemental tax bills, or the December 9, 2008 Parker County ARB order.  *See Brennan*, 376 S.W.3d at 917 (citing Tex. Tax Code Ann. §§ 41.01–

---

[6]Brennan and Smith paid the assessed back taxes, plus penalties and interest, in September 2012.

[7]Section 42.09 provides, in part, that "procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive."  Tex. Tax Code Ann. § 42.09(a) (West 2015).

8

.71,[8] 42.09 (West 2015 & Supp. 2015) (outlining the administrative protest procedure available to a property owner to challenge valuation of his property by an appraisal district); *Webb Cty. Appraisal Dist. v. New Laredo Hotel*, 792 S.W.2d 952, 954 (Tex. 1990) (discussing protest procedure)). In response, the Taxpayers argued (1) that exhaustion of administrative remedies—that is, utilization of the protest procedure set forth in chapter 41—was not required based on the exceptions to the exhaustion-of-administrative-remedies doctrine and (2) that the doctrine did not apply because the Government Entities and Hammonds acted outside their statutory powers. *Id.*

In resolving the issue, we pointed out that the notices sent to the Taxpayers in October 2008 stated that they were sent pursuant to section 25.21, which addresses the situation in which property has been omitted from the appraisal district's appraisal records. *Id.* at 918. Section 25.21 provides as follows:

> (a) If the chief appraiser discovers that real *property was omitted* from an appraisal roll in any one of the five preceding years or that personal *property was omitted* from an appraisal roll in one of the two preceding years, he *shall appraise the property* as of January 1 of each year that it was omitted and *enter the property and its appraised value in the appraisal records*.

---

[8]Some of the sections of chapter 41 of the tax code cited in our prior opinion have been amended since the opinion was issued. Because these amendments do not impact the issues raised in our prior opinion or in these consolidated appeals, we cite to the current version of the statute.

9

(b) The entry shall show that the appraisal is for *property that was omitted* from an appraisal roll in a prior year and shall indicate the year and the appraised value for each year.

Tex. Tax Code Ann. § 25.21 (West 2015) (emphasis added). The remedy provided by section 25.21 is the entry of "the property and its appraised value in the appraisal records." *Brennan*, 376 S.W.3d at 918 (quoting Tex. Tax Code Ann. § 25.21). But in this case, the Taxpayers' properties were already properly appraised and entered in the Parker County appraisal records for the years 2003 through 2007, and they paid all property taxes assessed against their properties for the years 2003 through 2007. *Id.* at 919. But the taxing units—the Cities— were not listed in the Parker County appraisal records from 2003 through 2007 as taxing units in which the Taxpayers' properties were taxable. *Id.* Thus, the taxes assessed against the Taxpayers' properties and paid by them for the years 2003 through 2007 did not include city taxes. *Id.* Section 25.21 does not provide a remedy for omitted taxing units. *Id.* Thus, we held that in the absence of any other statutory authorization the Government Entities and Hammonds acted outside their statutory authority by utilizing section 25.21 to add the Cities as taxing units to the 2003 through 2007 appraisal records. *Id.*

The Government Entities and Hammonds also contended in the prior appeal that section 25.23(a)(1), entitled "Supplemental Appraisal Records," authorized them to utilize section 25.21 to include the Cities as taxing units in the supplemental 2008 appraisal records and that the Parker County ARB's December 9, 2008 order approved those supplemental appraisal records. *Id.*;

10

*see* Tex. Tax Code Ann. § 25.23(a)(1) (West Supp. 2015).[9] The Government Entities and Hammonds further asserted that the Taxpayers should have protested the December 9, 2008 ARB order. *Brennan*, 376 S.W.3d at 919. We held that the Government Entities and Hammonds's argument failed for two reasons. *See id.* at 919–20. First, section 25.23(a)(1), like section 25.21, authorizes supplemental appraisal records that add omitted "property," not omitted "taxing unit[s,]" and the two statutorily defined terms are not interchangeable. *Id.* (citing Tex. Tax Code Ann. §§ 1.04(1), (12), 25.23(a)(1) (West 2015)). Second, to the extent that section 25.23 could be construed to authorize the chief appraiser to prepare supplemental appraisal records including property that was omitted from an appraisal roll in a prior tax year (like the Government Entities and Hammonds contended the Taxpayers' properties were omitted from the Cities' appraisal rolls in this case), section 25.23 dictates the substantive and procedural mechanisms required to generate supplemental appraisal records, which were not followed in this case. *Id.* at 920; *see* Tex. Tax Code Ann. § 25.23.

Accordingly, we held that the Taxpayers' failure to exhaust administrative remedies concerning the October 2008 section 25.21 notice and enclosed tax

[9]In 2015, section 25.23 was amended to add subsection (a–1), which only applies to appraisal records for the 2015 tax year and expires December 31, 2016. *See* Act of May 29, 2015, 84th Leg., R.S., ch. 465, § 3, sec. 25.23, 2013 Session Law Serv. 1778, 1779 (West) (codified at Tex. Tax Code § 25.23(a–1)). Because this amendment does not impact the issues raised in our prior opinion or in these consolidated appeals, we cite to the current version of the statute.

bills or concerning the December 9, 2008 Parker County ARB order approving the supplemental appraisal records for 2008 fell within one of the exhaustion-of-administrative-remedies doctrine's exceptions—that the Parker County Appraisal District and the Parker County ARB acted outside their statutorily authorized power by utilizing section 25.21 or section 25.23(a)(1) to assess back city taxes against the Taxpayers based on the omission of taxing units from the Parker County Appraisal District's appraisal records. *Brennan*, 376 S.W.3d at 921–22. And to the extent that section 25.23 did authorize the supplementation of the Cities' appraisal rolls with the Taxpayers' property, the Government Entities and Hammonds failed to comply with the statutory requisites to do so. *Id.* at 923. Because we determined that the Taxpayers' failure to pursue any type of protest procedure fell within the acting-outside-statutory-powers exception to the exhaustion-of-administrative-remedies doctrine, we held that the trial court erred by granting the Government Entities and Hammonds's plea to the jurisdiction on the ground that the Taxpayers failed to exhaust their administrative remedies under the tax code. *See id.* at 922, 928.

### III. Denial of Class Action Certification

In their sole issue in this appeal, the Taxpayers contend that the trial court erred by denying their motion for class action certification.

### A. Standard of Review

We review a class certification order for an abuse of discretion. *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 439 (Tex. 2000). A trial court abuses its discretion

12

if it acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012).

In determining whether the trial court abused its discretion in denying class certification, we do not view the evidence in a light most favorable to the trial court's decision nor do we entertain every presumption in favor of the trial court's decision. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 690–91 (Tex. 2002). We determine whether the trial court, before ruling on a class certification, performed a "rigorous analysis" of whether all prerequisites to certification have been met. *Bernal*, 22 S.W.3d at 435. Compliance with class action requirements "must be demonstrated; it cannot merely be presumed." *Henry Schein*, 102 S.W.3d at 691 (citing *Bernal,* 22 S.W.3d at 435). Further, "there is no right to litigate a claim as a class action. Rather, Rule 42 provides only that the court may certify a class action if the plaintiff satisfies the requirements of the rule." *Bernal,* 22 S.W.3d at 439 (quoting *Sun Coast Res., Inc. v. Cooper*, 967 S.W.2d 525, 529 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.) (op on reh'g)); *see* Tex. R. Civ. P. 42(a)–(b); *Ridgeway v. Burlington N. Santa Fe Corp.*, 205 S.W.3d 577, 581 (Tex. App.—Fort Worth 2006, pet. denied) (holding appellant seeking to reverse order denying class certification "faces a formidable task" and must demonstrate that rule 42 requirements were satisfied and that the "trial

court's refusal to certify the class was legally unreasonable under the facts and circumstances of the case"). Not only must the Taxpayers demonstrate that they satisfied all of the rule 42 requirements for certification, but they must also show that the trial court's refusal to certify the class was legally unreasonable under the facts and circumstances of the case. *See Doran v. ClubCorp USA, Inc.*, 174 S.W.3d 883, 888 (Tex. App.—Dallas 2005, no pet.); *Fuller v. State Farm Cty. Mut. Ins. Co.*, 156 S.W.3d 658, 660 (Tex. App.—Fort Worth 2005, no pet.). So long as the trial court acted rationally in the exercise of its discretion, we will uphold its ruling denying certification. *Vinson v. Tex. Commerce Bank–Houston Nat'l Ass'n*, 880 S.W.2d 820, 824–25 (Tex. App.—Dallas 1994, no writ) ("[E]ven if certification would have been proper [under rule 42], a denial may still not be an abuse of discretion.").

## B. Class Action Certification

Texas Rule of Civil Procedure 42 governs class action certification.[10] *See* Tex. R. Civ. P. 42. A class action may be maintained only if it satisfies the four requirements of rule 42(a): (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law, or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4)

---

[10]Rule 42 is patterned after Federal Rule of Civil Procedure 23; consequently, federal decisions and authorities interpreting current federal class action requirements are persuasive authority. *Bernal*, 22 S.W.3d at 433.

14

adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class").  Tex. R. Civ. P. 42(a); *Bernal*, 22 S.W.3d at 433.  In addition to the subsection (a) prerequisites, a class action must meet one of the three requirements under rule 42(b).  Tex. R. Civ. P. 42(a)–(b); *Bernal*, 22 S.W.3d at 433.

The Taxpayers sought certification under both rule 42(b)(2) and (b)(3). Subsection (b)(2) provides that an action may be maintained as a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Tex. R. Civ. P. 42(b)(2).  Subsection (b)(3) provides that an action may also be maintained as a class action when  "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Tex. R. Civ. P. 42(b)(3).  The nonexhaustive factors the trial court should consider in this determination are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (D) the difficulties likely to be encountered in the management of a class action.  Tex. R. Civ. P. 42(b)(3)(A)–(D).

## C. The Taxpayers' Claims

The Taxpayers pled claims for declaratory, injunctive, and mandamus relief. Specifically, they sought declarations that the relevant statutes (1) do not permit the Parker County ARB to allow automatic assessment of property taxes owed for previous years without the taxing units' first exhausting administrative remedies, (2) do not allow the sending of tax bills before the tax rolls are approved, (3) do not allow the assessment of property for previous years when the approved rolls do not specify the tax years being modified, (4) make the 2003–2007 assessment void *ab initio*, making any payments involuntary and entitling the Taxpayers to a refund, (5) do not allow the supplementation of "omitted property" to tax rolls where that property previously appeared in the appraisal records for all years in question and those appraisal records containing such property were approved and subsequently assessed, (6) define explicitly and require the separate listing of "property," "appraised value," all "taxing units," and all "tax years" in which a property is taxable in the appraisal records, the appraisal roll, and the tax roll, and (7) as applied by the Government Entities and Government Officials in this case, violate the due process and equal protection clauses of the Texas Constitution.

In support of their claim for injunctive relief, the Taxpayers pled in part that

> 61. The Cities and Larry Hammonds are seeking to collect assessments from Counter–Plaintiffs and the class members for prior years, which assessments this lawsuit seeks to have declared void.

16

62. The Government Officials have committed various acts that are *ultra vires* of the scope of their authority under the Tax Code and that violate the due process and equal protection clauses of the Texas Constitution.

63. Specifically, the Tax Code limits the method and process by which the Government Entities and Government Officials may assess and collect taxes—that method and process constitutes due process for the taxpayers. By failing to operate within that method and process, the Government Entities and Government Officials have violated due process.

64. Additionally, the attempted collection of assessments from any Counter–Plaintiffs and class members who obtained their properties in the midst of the 2003–2007 period and the refusal to collect the taxes from the prior owners constitutes an equal protection violation.

65. Counter–Plaintiffs and the class members will suffer immediate and irreparable injury, loss, or damage if the collection of the assessments described above is not permanently enjoined because Counter–Plaintiffs could suffer the loss or diminution of their property via tax liens and significant penalties and interest through the imposition and collection of the assessments on their respective properties. Additionally, the loss of constitutional protection is irreparable harm.

66. Counter–Plaintiffs do not have an adequate remedy at law because money alone will not compensate for the imposition of illegal assessments on Counter–Plaintiffs' properties or the failure of the Government Entities and Government Officials to comply with the law and the Texas Constitution.

Based on these allegations, the Taxpayers sought an injunction restraining the

Government Officials from exceeding the scope of their authority, restraining the

Cities and Hammonds from collection of "invalid assessments," and restraining

17

the Government Entities from allowing the Cities to avoid exhausting their administrative remedies via a challenge petition.[11]

Lastly, the Taxpayers sought a writ of mandamus compelling the Government Officials to void the assessments on the Taxpayers' properties by the Cities for the tax years 2003–2007 and to refund all ad valorem taxes paid to the Cities on the Taxpayers' properties for the tax years 2003–2007.

## D. Analysis

All of the Taxpayers and all of the prospective class members have paid the assessed back property taxes for the tax years 2003 through 2007. The Taxpayers' ultimate objective is a refund of the taxes paid, and they state that their claim for "damages" is wholly dependent upon their claims for declaratory and injunctive relief.

When the claim is primarily one for monetary relief, notice and an opportunity to opt out of the class normally would be required in a (b)(2) class as they would be in a (b)(3) class. *Doran*, 174 S.W.3d at 887 (citing *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 668–69 (Tex. 2004)). The Taxpayers concede that "regardless of the subsection used, notice and opt-out provisions should be granted to the putative class." "Although (b)(2) does not

---

[11]*See* Tex. Tax Code Ann. § 41.03(a)(5) (stating that a taxing unit is entitled to challenge before the appraisal review board the failure to identify the taxing unit as one in which a particular property is taxable). *See generally Atascosa Cty. v. Atascosa Cty. Appraisal Dist.*, 990 S.W.2d 255, 259 (Tex. 1999) (discussing challenges by taxing units to appraisal district decisions under chapters 41 and 42 of the tax code).

explicitly require predominance and superiority as (b)(3) does, (b)(2) does require a rigorous analysis of 'cohesiveness.'" *Lapray*, 135 S.W.3d at 670. If notice and opt-out rights are provided to a (b)(2) class, the class cohesion analysis often "will be identical to the 'predominance and superiority' directive undertaken by the trial courts certifying (b)(3) classes." *Id.* at 671. Because the trial court refused to certify a class under both (b)(2) and (b)(3) and the Taxpayers concede that notice and op-out provisions should be granted to the putative class, the (b)(2) cohesiveness and (b)(3) predominance and superiority analyses are identical in this case. *See id.*; *see also Doran*, 174 S.W.3d at 887–88.

"[P]redominance is 'one of the most stringent prerequisites to class certification.'" *Lapray*, 135 S.W.3d at 663 (quoting *Bernal*, 22 S.W.3d at 433). "The predominance requirement prevents class certification when complex and diverse individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present otherwise viable claims or defenses." *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205 (Tex. 2007) (citing *Henry Schein*, 102 S.W.3d at 690; *Bernal*, 22 S.W.3d at 434). "Certification is not appropriate unless it is determinable from the outset that the individual issues can be considered in a manageable, time-efficient and fair manner." *Id.* (citing *Henry Schein*, 102 S.W.3d at 688). The test for determining whether common issues predominate is not whether the common issues outnumber individual issues but whether the common or individual issues will be the object of most of the litigants' efforts. *Bernal*, 22 S.W.3d at 434. "If, after common issues are

19

resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate." *Id.* "[A] judgment in favor of the class should settle the entire controversy and all that should remain is for the other class members to file their proof of claim." *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 554 (Tex. App.— Houston [14th Dist.] 2002, no pet.).

In its order denying the Taxpayers' motion to certify, the trial court identified the following issues of fact and law common to the proposed class members:

- How was the omission of the properties from the Cities' tax rolls and the failure to bill or collect the disputed taxes discovered?

- What specific actions were taken by Hammonds to correct the omission, send notices and tax bills for the back taxes, and obtain approval of the Parker County ARB for a supplemental tax roll?

- Did the omission of the class members' properties from the Cities' tax rolls from 2003 to 2007 cause the assessment and taxes for each of those years to be illegal or void?

- Was there statutory or other authority for the actions taken by Hammonds to back-assess taxes, send notices and tax bills, and supplement the 2008 tax roll?

- Was Hammonds acting within his discretion as chief appraiser or the Cities' tax assessor-collector when he took these actions?

- Was there a rational basis to waive taxes for property owners who sold their property during the 2003 to 2007 period?

The Taxpayers argue that once these common issues are decided, the only individual issues left for the trial court to decide are (1) which city the class

member paid his or her taxes to and (2) how much the class member paid in taxes. And, as they point out, evidence of both is already in the record.[12]

The Government Entities and Hammonds raised the voluntary payment rule as a defense to the Taxpayers' claims and argue that the rule bars class certification in this case because it causes individual issues to predominate over the issues common to the putative class. The trial court found that "the issues concerning the application of the voluntary payment rule to each class member will be the object of most of the efforts of the litigants and this [c]ourt" and that "the issues common to members of the class do not predominate over individual issues because litigation [over] the application of the voluntary payment rule as to each individual class member predominate over the issues common to the class." The trial court also found that "the proposed class lacks sufficient cohesiveness to warrant a class certification under rule 42(b)(2) even if notice and opt-out were provided."

The voluntary payment rule provides that "[a] person who pays a tax voluntarily and without duress does not have a valid claim for its repayment even if the tax is later held to be unlawful." *Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 876 (Tex. 2005). This rule "secures taxing authorities in the orderly conduct of their financial affairs," protects governmental entities from "threats

---

[12]A list of all of the affected property owners was admitted into evidence at the class-certification hearing. The list set forth each property owner's name; how much in taxes, principal, and interest for the tax years 2003 through 2007 each property owner paid; and the date the payment was made.

21

to . . . financial security that can arise from unpredictable revenue shortfalls," and "supports the age-old policies of discouraging litigation with the government." *Id.* at 876–77.

To avoid application of the rule, a payor must show some type of duress. *Id.* at 877–78. There is "no exact rule as to what constitutes sufficient duress or compulsion to make the payment of an illegal tax an involuntary payment[;] the question is one to be determined from the particular circumstances under which the payments are made." *Crow v. City of Corpus Christi*, 209 S.W.2d 922, 924 (Tex. 1948). But "in all its forms (whether called duress, implied duress, business compulsion, economic duress or duress of property)," a claim of duress requires a showing of "improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Bolton*, 185 S.W.3d at 878–79.

The application of the voluntary payment rule can cause individual issues to predominate and therefore preclude class certification. *See Salvaggio v. Houston ISD*, 709 S.W.2d 306, 308 (Tex. App.—Houston [14th Dist.] 1986, writ dism'd) (holding trial court did not abuse its discretion in refusing to certify a class based on voluntary payment rule's application where taxpayers were seeking recovery of attorney-fee charges paid in connection with penalty and interest charges for delinquent taxes). Here, the trial court recognized in its order denying class certification that the claims of each class member would require

22

individual factual and legal inquiries as to the voluntary nature of the payment of the assessed back taxes such as,

- Did the class member pay the taxes voluntarily?

- Did the class member comply with the tax code procedures that would have allowed him to assert his right to refunds?

- Did the class member pay the taxes under duress or coercion?

- What was the class member's state of mind when payment was made and what was the motive for his payment?

- When was the payment made in relation to the taxes becoming delinquent and incurring penalties and interest?

- Did the class member protest the taxes before the appraisal review board, and if so, what grounds were asserted?

- Did the class member file suit to challenge the assessment and pay the tax prior to the delinquency date pending the resolution of the suit?

- Did the class member indicate that payment was made under protest?

- Did the class member express a willingness to pay the tax?

- Did the class member receive any favorable federal income tax treatment from payment of the assessed back taxes?

- Did the class member receive adequate notice concerning the disputed taxes?

- Was the class member denied procedural due process?

- If the facts concerning a particular class member are undisputed, whether the payment was voluntary or involuntary is a question of law.

The Taxpayers assert that no individualized inquiry is necessary for the reason that the voluntary payment rule does not apply in this case as the class members were under implied economic duress as a matter of law because of the threats of penalties, interest, and tax liens, the actual imposition of penalties and interest against some of the property owners in this case, and the Cities' ability to file suits to collect unpaid taxes and to foreclose on the tax liens. *See Bolton*, 185 S.W.3d at 877 ("We have referred to business compulsion and economic duress as 'implied duress,' because the pressure to pay these government exactions is indirect and flows from statutes or ordinances."). They argue that because these "coercive elements" are objectively present, an examination of the subjective minds of the class members is not necessary.

Courts have held on specific facts that a payment of an illegal tax or fee was made under duress so as to defeat a claim of voluntary payment. *See, e.g.*, *Lowenberg v. City of Dallas*, 261 S.W.3d 54, 59 (Tex. 2008) (holding that payment of city fee implemented through city ordinance and assessed against commercial buildings to generate funds for fire protection services was not voluntary when nonpayment of the fee constituted a Class C misdemeanor); *Miga v. Jensen*, 96 S.W.3d 207, 211, 224–25 (Tex. 2002) (concluding that compulsion "implied by the threat of statutory penalties and accruing interest" constituted economic duress); *Highland Church of Christ v. Powell*, 640 S.W.2d 235, 237 (Tex. 1982) (holding duress could be implied from a statute which imposed a penalty for failure to pay a tax); *State v. Akin Prods. Co.*, 286 S.W.2d

24

110, 111–12 (Tex. 1956) (holding that if a reasonably prudent man finds that in order to preserve his property or protect his business interest it is necessary to make a payment of money which he does not owe, the taxes are paid under duress); *Crow*, 209 S.W.2d at 925 (holding city ordinance requiring payment of illegal cab operator's license fee under threat of forfeiting the right to do business constituted payment under duress or business compulsion as a matter of law). But, despite these specific holdings, as the supreme court has noted, the voluntary payment rule has been rendered largely unavailable in Texas due to specific provisions of the tax code. *See Bolton*, 185 S.W.3d at 879–80; *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 769–71 (Tex. 2005). As pointed out in *Bolton*, 185 S.W.3d at 879, tax code section 31.115 provides a mechanism through which property taxes can be paid under protest:

> Payment of an ad valorem tax is involuntary if the taxpayer indicates that the tax is paid under protest:
>
> > (1) on the instrument by which the tax is paid; or
> >
> > (2) in a document accompanying the payment.

Tex. Tax Code Ann. § 31.115 (West 2015).

Because section 31.115 provides a mechanism through which a taxpayer may pay a tax under protest, we cannot agree with the Taxpayers that all of the prospective class members were under implied economic duress as a matter of law. *See id.*; *cf. Bolton*, 185 S.W.3d at 881 ("In light of the choices the students retained and their right to request a waiver of the fees or otherwise protest the

25

imposition of the fee, any coercion that existed was not actual and imminent and did not constitute duress as a matter of law."). Accordingly, we cannot conclude that trial court abused its discretion by finding that the voluntary payment rule might apply to some members of the prospective class but not to others.

A list of the omitted properties admitted into evidence at the class-certification hearing showed that all of the affected taxpayers had paid the back property taxes for the tax years 2003 through 2007.[13] Discovery excerpts also admitted into evidence indicate that some of the Taxpayers—Brennan and Smith and the Kaspers—noted on their tax payments that they were being paid under protest. Thus, assuming that common issues in this case could be decided in favor of the proposed class, it would be necessary to determine, on an individual basis, the issues identified by the trial court in its order denying the Taxpayers' motion to certify the class, particularly whether the voluntary payment rule applies to each particular property owner. The trial court could have reasonably concluded that after resolving the common issues, "presenting and resolving individual issues [was] likely to be an overwhelming or unmanageable task for a single jury." *Bernal*, 22 S.W.3d at 434; *see also Vinson*, 880 S.W.2d at 825 ("Nevertheless, in this case, if appellants prevail as to any one of the common issues of law, the members of the class must do more than prove the amount of

_____

[13]Some of the property owners presented tax certificates showing they had purchased their property during or after the 2003 through 2007 timeframe and were not required to pay taxes for the years prior to their ownership.

26

their individual claims."). Thus, we conclude the trial court did not abuse its discretion in denying the Taxpayers' motion for class certification. Because we have determined that the Taxpayers have failed to demonstrate that they satisfied rule 42(b)(2) or 42(b)(3), which is dispositive of this issue, we need not address their arguments regarding rule 42(a). *See* Tex. R. App. P. 47.1. Accordingly, we overrule the Taxpayers' sole issue.

### IV. Denial of the City of Aledo's Motion for Summary Judgment

In four issues, the City of Aledo complains in its appeal that the trial court erred by denying its motion for summary judgment on the Taxpayers' claims.

### A. Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

27

**B. Did Hammonds correctly follow tax code section 25.21?**

In its fourth issue, the City of Aledo asserts that Hammonds correctly followed tax code section 25.21 in assessing the back taxes. The City of Aledo raised this issue in its motion for summary judgment "in the event this case is appealed beyond the court of appeals" and carries it forward on appeal "merely to preserve the issue." Because this issue, as well as portions of the City of Aledo's first and third issues, have been decided previously by this court, our first opinion in this case constitutes "law of the case" and will determine our resolution of this issue, as well as portions of the City of Aledo's first and third issues.

Under the "law of the case" doctrine, a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case. *In re Assurances Generales Banque Nationale*, 334 S.W.3d 323, 325 (Tex. App.—Dallas 2010, orig. proceeding); *see In re Henry*, 388 S.W.3d 719, 727 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding [mand. denied]); *Truck Ins. Exch. v. Robertson*, 89 S.W.3d 261, 264 (Tex. App.—Fort Worth 2002, no pet.). Having decided an issue previously, a court of appeals is not obligated to reconsider the matter in subsequent appeals. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012); *see also In re Henry*, 388 S.W.3d at 727; *In re Assurances Generales Banque Nationale*, 334 S.W.3d at 325; *Woods v. VanDevender*, 296 S.W.3d 275, 279 (Tex. App.—Beaumont 2009, pet. denied) (all citing *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003)). It may do so in its own discretion, however, and there is not an absolute

bar to reconsideration if subsequent hearings, briefing, or pleadings have modified the facts or relief sought. *See Briscoe*, 102 S.W.3d at 716–17. When, however, the issue is really one of law, our discretion to revisit the issue will be used sparingly, if at all. *See, e.g.*, *In re Henry*, 388 S.W.3d at 728; *City of Dallas v. Jones*, 331 S.W.3d 781, 784–85 (Tex. App.—Dallas 2010, pet. dism'd). Regardless, our review of the record leads us to decline the invitation to revisit the City of Aledo's fourth issue and, as explained below, portions of its first and third issues since they relate to questions of law.

Based upon our prior holding, we conclude that the City of Aledo failed to prove as a matter of law that Hammonds correctly followed section 25.21 in assessing the back taxes in this case. *See Brennan*, 376 S.W.3d at 918–22. Accordingly, we overrule the City of Aledo's fourth issue.

## C. Are the taxes invalid or void?

In its first issue, the City of Aledo argues that the trial court erred by denying its motion for summary judgment because the lack of specific statutory authority for the assessment of back taxes in this case did not render the assessment and resulting taxes void. In its motion and on appeal, the City of Aledo relies on *McPhail v. Tax Collector of Van Zandt County*, 280 S.W. 260 (Tex. Civ. App.—Dallas 1925, writ ref'd), to support this contention.

In *McPhail*, the Van Zandt County school trustees, acting pursuant to new legislation, formed the Colfax high school district by consolidating the Colfax and Clowers districts and appointed seven trustees for the district. *Id.* at 262. The

29

new trustees organized the board and levied a tax on the property in the new district at the same rate that had been levied by the trustees in the respective school districts. *Id.* The tax rolls for the new district were delivered to the county tax collector, but because of an omission by the tax assessor, the property of two landowners was omitted from the tax rolls. *Id.*

Other property owners in the newly formed district brought suit to enjoin the collection of the taxes. *Id.* at 261–62. They argued that the assessment was illegal and void because not all property located within the district was included on the assessor's tax rolls. *Id.* at 265. In addressing this argument, the court stated,

> The failure of the assessor to assess the property of the two taxpayers was just such an omission as frequently occurs in the practical administration of tax laws. If such an oversight as this had the effect of nullifying an entire assessment, interminable confusion would prevail in regard to the collection of taxes; but such is not the case. The taxpayer's obligation is not thereby discharged, nor does his property escape taxation. The law anticipated that such mistakes would occur, and made provision for same. *The general procedure is that, where property for any reason has escaped assessment for any year, it is the duty of the owner to render the same and pay the tax; but, if he should fail to discharge this legal duty, it becomes the duty of the assessor to assess the property for the omitted year at the same rate under which it should have been assessed, and attach the assessment as a supplement to the regular rolls for the current year.* While there is no definite provision to this effect in the statute under consideration, yet it is the rule applied in analogous situations, and is applicable here.

> It is the duty of the tax assessor, under the statute in question, to make a complete legal assessment of all property in the district and this duty would not be discharged where an omission of this nature takes place, unless the property is assessed in a supplemental assessment as indicated above, or is brought forward

30

on an unrendered roll, which procedure the assessor is also authorized to pursue.

*Id.* (emphasis added) (citations omitted).

In its summary-judgment motion, the City of Aledo argued that based on the holding in *McPhail*—when no statute specifically applies, the assessor is still under a duty to back-assess taxes and the taxpayer is still under a duty to pay them—the back assessment made without statutory authority in this case did not render the assessment or the taxes void. However, as pointed out by the Taxpayers, section 41.03(a)(5) of the tax code allows a taxing unit to challenge the failure to identify the taxing unit as one in which a particular property is taxable by filing a challenge petition with the appraisal review board. *See* Tex. Tax Code Ann. §§ 41.03(a)(5), .04. The appraisal review board is required to hear a challenge only if the taxing unit files a petition with the board before June 1 or within fifteen days after the date that the appraisal records are submitted to the board, whichever is later. *Id.* § 41.04. After notice and hearing, the board is required to make a determination on the challenge, enter an appropriate written order, and send notice of the determination to the taxing unit. *Id.* §§ 41.05–.07. If "the board finds that the appraisal records are incorrect in some aspect raised by the challenge," it "shall refer the matter to the appraisal office and by its order shall direct the chief appraiser to make . . . corrections in the records that are necessary to conform the records to the requirements of law." *Id.* § 41.07(b).

31

The Texas Constitution creates the obligation to appraise and assess property for purposes of taxation and provides that all property must be equally and uniformly taxed. *See* Tex. Const. art. VIII, § 1(a) ("Taxation shall be equal and uniform."), art. VIII, § 11 ("[A]ll lands and other property not rendered for taxation by the owner thereof shall be assessed at its fair value by the proper officer."). The tax code creates a system for property tax administration, defines taxable property, establishes exemptions, sets out procedures for appraisal, tax assessment, and tax collection, and provides review and challenge procedures. *See* Tex. Tax Code Ann. §§ 1.01–43.04 (West 2015 & Supp. 2015). It also provides a mechanism through which the City of Aledo could have challenged its omission from the 2003 through 2007 Parker County appraisal records. *See id.* §§ 41.03(a)(5), .04. The City of Aledo does not explain why its failure to follow the procedure set forth in the tax code does not render the assessment of the taxes in this case void or invalid. And we do not believe the court's holding in *McPhail*, which predates the enactment of the current version of the tax code, excuses the City of Aledo's failure to follow this procedure.

The City of Aledo also argues on appeal that "under Texas law there was no need for the back-assessment in this case because there were already valid taxes and assessments of the subject properties for each tax year between 2003 and 2007." In support of this contention, the City of Aledo cites *George v. Dean*, which held that the two essential elements for a valid tax are a "legal levy by [a] competent legislative authority" and "a valid assessment of the property upon

32

which such tax is levied by the officer or tribunal to whom this duty is committed by law." 47 Tex. 73, 84 (1877). The City of Aledo, however, did not raise this argument in its motion for summary judgment. Thus, we do not address it. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *see also* Tex. R. App. P. 33.1(a)(1) (stating that as prerequisite for presenting complaint for appellate review, record must show complaint was made to trial court by timely request, objection, or motion).

The Taxpayers alleged that Hammonds had a duty to refrain from sending the tax bills until the tax rolls were approved and sought a declaration that the tax code did not permit Hammonds to send a tax bill before the tax roll was approved and did not allow the assessment of property in previous years where the approved rolls do not specify the tax years being modified. In its summary-judgment motion, the City of Aledo argued that the tax code does not require that the supplemental appraisal records be approved before the assessor mails a tax bill to a property owner and that the "2008 tax year" language in the ARB order included the supplement to the appraisal records made for the property that was omitted from the City of Aledo's appraisal rolls from 2003 through 2007. But as we held in our previous opinion,

> no supplemental appraisal records exist for the years 2003–2007 [in the form required by tax code sections 25.23(b) and 25.02(a)(10)], and thus supplemental appraisal records for the years 2003–2007 could not have been included within the supplemental appraisal records approved by Parker County ARB in its December 9, 2008

33

order approving supplemental appraisal records for 2008. Because section 25.23(a)(1) does not authorize the inclusion of the Cities as taxing units in supplemental appraisal records and because the statutory requisites for inclusion of [the Taxpayers'] properties on the Cities' appraisal rolls for the tax years 2003–2007 via supplemental appraisal records were not met, Parker County ARB acted outside its statutory authority by purporting to approve the inclusion of the Cities as taxing units of [the Taxpayers'] properties for the years 2003–2007 via the December 9, 2008 order approving supplemental appraisal records for 2008.

*Brennan*, 376 S.W.3d at 920–21 (footnote omitted).

Thus, the City of Aledo has failed to establish as a matter of law that the assessed back taxes were not invalid or void. Accordingly, we overrule its first issue.

## D. Did the City of Aledo violate the Taxpayers' equal protection rights?

The Taxpayers alleged that the City of Aledo violated their right to equal protection by not attempting to collect taxes from former property owners who owed taxes for the 2003 through 2007 period.[14] In its second issue, the City of Aledo asserts that the trial court erred by denying its motion for summary judgment because the Taxpayers' equal protection allegations are insufficient as a matter of law as the City of Aledo had a rational basis for not pursuing collection actions against former property owners. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998) ("An as-applied equal protection

---

[14]The record shows that the property owners who presented tax certificates showing that they purchased the property during or after the 2003–2007 period were not required to pay assessed back property taxes for the years they did not own the property. *See* Tex. Tax Code Ann. § 31.08.

34

claim requires that the government treat the claimant different from other similarly-situated landowners without any reasonable basis."), *cert. denied*, 526 U.S. 1144 (1999).

> In its motion for summary judgment, the City of Aledo argued that

> it is conceivable that tax collection is not being pursued against former owners because, although those persons are still personally liable for those taxes, there might not still be a lien on the subject property securing payment of those taxes if a tax certificate was erroneously issued showing no taxes owing.  Tex. Tax Code §§ 31.08(c), 32.01(a), 32.07(a).  The additional costs associated with pursuing collection suits against these former owners when their location may or may not be known also provide a rational basis to treat them differently.

The City of Aledo, however, provided no summary-judgment evidence to establish this basis for not pursuing collection actions against former property owners.  *See Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 42 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (op. on reh'g) (explaining that "neither the motion for summary judgment, nor the response, even if sworn, is ever proper summary judgment proof"); *Cuellar v. City of San Antonio*, 821 S.W.2d 250, 252 (Tex. App.—San Antonio 1991, writ denied) (stating that "motion for summary judgment is a pleading and may not be considered as summary judgment evidence" (citing *Kendall v. Whataburger, Inc.*, 759 S.W.2d 751, 754 (Tex. App.—Houston [1st Dist.] 1988, no writ))); *see also* Tex. R. Civ. P. 166a(c) ("No oral testimony shall be received at the [summary-judgment] hearing.").  Because the City of Aledo failed to produce any summary-judgment evidence establishing its right to summary judgment on the Taxpayers' equal

35

protection claim, the trial court did not err in denying its motion for summary judgment on this ground. Accordingly, we overrule the City of Aledo's second issue.

**E. Did the City of Aledo violate the Taxpayers' due process rights?**

The Taxpayers alleged that the City of Aledo violated their due process rights by failing to utilize the proper procedure under the tax code to assess and collect the back taxes. They argue on appeal that the due process violation occurred when the taxes were assessed without notice and a hearing, which left the Taxpayers with no statutory opportunity to protest or contest Hammonds's actions as tax assessor/collector. The City of Aledo argues in its third issue—as it did in its motion for summary judgment—that the Taxpayers' due process allegations fail as a matter of law because there was no lack of notice.

The collection of a tax constitutes a deprivation of property, and thus, a taxing unit must afford a property owner due process of law. *Appraisal Review Bd. of El Paso Cty. Cent. Appraisal Dist. v. Fisher*, 88 S.W.3d 807, 813 (Tex. App.—El Paso 2002, pet. denied) (citing *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dept. of Bus. Regulation of Fl.*, 496 U.S. 18, 36–37, 110 S. Ct. 2238, 2250–51 (1990)). "Due process, at a minimum, requires notice and a fair opportunity to be heard prior to a deprivation of a protected property interest." *Id.*

The City of Aledo alleged in its motion for summary judgment that it did not violate the Taxpayers due process rights because (1) the Taxpayers were

36

provided notice of a procedure to follow to challenge the supplemental appraisal records, (2) there was no allegation that this notice was inadequate, and (3) if the notice were inadequate, the Taxpayers had the right to challenge the sufficiency of the notice before the Parker County ARB. *See* Tex. Tax Code Ann. § 41.411 ("A property owner is entitled to protest before the appraisal review board the failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which the property owner is entitled.").

The notices sent to the Taxpayers along with the tax bill informed them that they had a right to appeal to the Parker County ARB Hammonds's decision as the chief appraiser to add the omitted taxing units to the appraisal rolls. The Taxpayers complain this notice is insufficient because the Parker County ARB does not have jurisdiction to review Hammonds's actions as the Parker County tax assessor/collector. We agree. As we pointed out in our prior opinion,

> no protest procedures exist to contest an already-issued, statutorily unauthorized tax bill received from the tax assessor collector on already-appraised property. *See* Tex. Tax Code Ann. § 41.41(a)(9) (authorizing protest of actions of chief appraiser, appraisal district, or appraisal review board but not actions of tax assessor/collector); *Dallas Cent. Appraisal Dist. v. 1420 Viceroy Ltd. P'ship*, 180 S.W.3d 267, 269–70 (Tex. App.—Dallas 2005, no pet.) (explaining that tax code did not authorize protest of action of taxing unit).

*Brennan*, 376 S.W.3d at 917 n.6.

Accordingly, we conclude that the City of Aledo failed to establish its right to judgment as a matter of law on the Taxpayers' due process claims. Accordingly, we overrule the City of Aledo's third issue.

37

## V. Conclusion

Having overruled the Taxpayers' sole issue, we affirm the trial court's order denying their motion to certify a class action. Having overruled each of the City of Aledo's issues, we affirm the trial court's order denying the City of Aledo's motion for summary judgment. We remand this case to the trial court for further proceedings in accordance with this opinion.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED: June 2, 2016

38